REC'D NOV 0 8 2017



**Seldey's**
FORD OF AUGUSTA

# SALES AGREEMENT

Customer No. _____

Invoice No.: _____

10004 SW US Highway 54 - Augusta, KS 67010
PHONE (316) 775-2246
**AUGUSTA, KANSAS 67010-7509**

Delivery Date: __10/24/17__

| Buyer | MIRACLE LSHAUN THOMPSON | | Title To | |
|---|---|---|---|---|
| Address | 311 OAK  #2 STREET Phone - Res  (316)227-0010 | | Address | Phone-Work |
| City | NEWTON | State  KS  Zip  67114 | City | State  Zip |
| Lien To | LEAD FINANCIAL SERVICES, LLC | | Cell | |
| Salesman | CORNELL ROSS | | Email | |

| STOCK NO. | YEAR | MAKE | MODEL & BODY STYLE | COLOR | N.U.D | MILEAGE | IDENTIFICATION NUMBER | |
|---|---|---|---|---|---|---|---|---|
| 144158 | 2009 | DODGE | 5DR 4DR R/T JOURNEY | BLACK | US | 105,382 | 3D4GG67V09T150353 | |
| TRADE-IN #2 STOCK NO. | YEAR | MAKE | MODEL & BODY STYLE | COLOR | MILEAGE | | IDENTIFICATION NUMBER | VAL |
| | | | | | | | | |
| TRADE-IN #1 STOCK NO. | YEAR | MAKE | MODEL & BODY STYLE | COLOR | MILEAGE | | IDENTIFICATION NUMBER | VAL |
| | | | | | | | | |

| CODE Optional Equipment (Factory & Dealer Instl) | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| | |
|---|---|
| BASE PRICE & OPTIONS | 8,503.00 |
| Added or Deleted Equipment | N/A |
| Total Purchase Price | 8,503.00 |
| Trade In Allowance/Inc.Discounts* | N/A |
| Trade Difference | 8,503.00 |
| Dealer Administration Fee | $399 |
| Extended Service Contract | 2,599.00 |
| Additional Products    GAP | 699.00 |
| Sub Total | 12,200.00 |
| ADDED OR DELETED EQUIPMENT | N/A |
| Sales Tax | 776.05 |
| Manufacturer's Rebate | N/A |
| Balance Due On Trade In **** See Paragraph NO. 12 | N/A |
| TOTAL CASH PRICE | 12,976.05 |
| Down Payment | 1,000.00 |
| BALANCE DUE | 11,976.05 |

1. Seller HAS NOT performed a title search on the vehicle for the purpose of determining the accuracy of the mileage shown on the odometer or for any other purposes.

2. To the Seller's knowledge the vehicle (HAS) / (HAS NOT) been used as a driver's training, leased, rented or factory buy-back vehicle.

3. Buyer understands that liability insurance coverage is not included in the purchase of the vehicle.

4. * Buyer understands and agrees that the value shown for the trade allowance and discount is only for the purpose of computing the amount of negotiated trade difference and is not a representation of the fair market value of the trade-in.

5. Buyer understands that the information contained on the window sticker of the vehicle (Monroney Sticker if the vehicle is new, Buyer's Guide if the vehicle is pre-owned) constitutes a part of this Sales Agreement. The information in the Buyer's Guide overrides any contrary provisions in this Sales Agreement.

6. Buyer represents and warrants that the trade-in vehicle is currently registered as a highway use vehicle in the state of _____. Buyer also represents and warrants that the trade-in vehicle has not had body and/or paint damage in excess of $2,000 at any time during buyers ownership and buyer has no knowledge of the vehicle sustaining such damage at any time prior to Buyer's ownership. Buyer represents and warrants that the trade-in vehicle has not been titled as a non-high-way, salvaged or junk vehicle and that the airbags in the trade-in vehicle have not been deployed. Buyer represents and warrants that he/she is the owner of the trade in vehicle and has authority to trade in the vehicle and assign the certificate of title.
Buyer's Initials ____

7. The oral representations which were made to Buyer about the vehicle by anyone acting on behalf of the Seller are: _____

Buyer's Initials ____

8. Buyer represents that Buyer has inspected, as fully desired, the vehicle for blemishes, repairs, damage, condition, etc., and accepts the vehicle in its present condition except for any items noted on the We Owe.

9. Buyer represents that Buyer does not intend to export the vehicle to another country. If the vehicle is exported or titled in a foreign country,Buyer is responsible for any charge back from the manufacturer, including any discounts, allowances, rebates and incentives of any kind and will upon demand pay the charge back to Seller.

10. This transaction takes place in the State of Kansas and shall be governed by and construed in accordance with the laws of the State of Kansas. Except for any applicable arbitration rules to the contrary, the State of Kansas shall have exclusive jurisdiction for all disputes.

11. In the event Buyer breaches any terms, conditions or obligations in the Sales Agreement, Buyer shall be liable to Seller, in addition to all other remedies available at law or in equity, for attorney fees, court costs and all other expenses and damages incurred by Seller as a result of the breach.

12. Buyer is liable for any amount owed on the trade-in in excess of the amount shown in this Sales Agreement, and Buyer shall pay to Seller on demand the excess amount.

13. Buyer warrants and certifies that the amount shown for "Balance Due On Trade In" (if any) is the only lien or encumbrance on the vehicle.

14. Other documents that are integrated with this Sales Agreement include the Conditional Sale Agreement, Retail Installment Contract, Arbitration Agreement, We Owe and any other documents executed as part of this transaction.

*Purchaser understands and agrees that the reverse side hereof constitutes a part of this Agreement.*

Member-Wichita Automobile Dealers Association

A-80, B-81, C-82, D-83, E-84, F-85, G-86, H-87, J-88, K-89, L-90, M-91, N-92, P-93, R-94, S-95, T-96, V-97, W-98, X-99, 1-01, 2-02, 3-03, 4-04, 5

FOR 12061 (05/15)

**EXHIBIT**
_A_

tabbies®

The vehicle purchase is subject to the following terms and conditions, including those terms and conditions on the reverse side of this Sales Agreement:

15. (Manufacturer) has reserved the right to change the list price of new motor vehicles without notice. In the event that the list price of the new car ordered hereunder is so changed, the cash delivered price, which is based on list price effective on the day of delivery, will be changed accordingly. If such case delivered price is increased, Buyer may, if dissatisfied with such increased price, cancel this order, in which event if a used car has been traded in as a part of the consideration herein, such used car shall be returned to Buyer upon the payment of a reasonable charge for storage and repairs (if any) or, if the used car has been previously sold by Seller, the amount received therefore, less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said car for sale, shall be returned to Buyer.

16. If the used car is not to be delivered to Seller until the delivery of the new car, the used car shall be reappraised at that time and such reappraisal value shall determine the allowance for such used car but if such reappraisal value is lower than the original allowance shown on the reverse side hereof Buyer may, if dissatisfied with such reappraisal value, cancel this order, such right to cancel, however, must be exercised prior to the delivery of the new car to Buyer and the surrender of the used car to Seller. Buyer agrees to deliver the original Bill of Sale and the Title to any used car traded herein along with the delivery of such used car, and Buyer warrants such used car to be his property free and clear of all Liens and Encumbrances except as otherwise noted herein. Buyer shall not have the right to cancel this order in the event that a lower reappraisal is the result of damage or alteration of the trade-in, which has occurred while the trade-in was in the possession of Buyer.

17. Unless this Sales Agreement is canceled by Buyer under and in accordance with paragraphs 15 or 16 above, Seller shall have the right, upon failure or refusal of Buyer to accept delivery of the Vehicle purchased herein and comply with the terms of this Sales Agreement, to apply any cash partial payment made by Buyer, and to sell such trade-in, if any, and apply the proceeds of such sale to the expenses specified in paragraph 15 and for such other expenses and losses as Seller may incur or suffer as a result of such failure or refusal by Buyer.

18. (Manufacturer) has the right to make any changes in the model or design of any accessories and part of any new motor vehicle at any time without creating any obligation on the part of either Seller or Manufacturer, to make corresponding changes in the car covered by this order either before or subsequent to the delivery of such car to Buyer.

19. Seller shall not be liable for delays caused by the Manufacturer, accidents, strikes, fires, or other causes beyond the control of Seller.

20. If the transaction is a cash transaction, Buyer agrees that the transaction is conditioned on Seller receiving payment in full. If payment is made in the form of a check, receiving payment in full means the point in time when Buyer's check clears and Seller actually receives the funds. If the transaction is not a cash transaction, before or at the time of delivery of the vehicle purchased and in accordance with the terms and conditions of payment indicated herein, Buyer shall execute all documents requested by Seller, including but not limited to, retail installment contract, security agreement, and Conditional Sale Agreement. Buyer authorizes Seller or any third-party finance company with which Seller does business, to conduct any reasonable investigation into Buyer's credit history and credit ability, including but not limited to, obtaining Buyer's consumer report. Also, if this transaction is not a cash transaction, the Sales Agreement is subject to cancellation if the third-party assignee rejects or does not approve Buyer's credit application, or Seller is unable to assign the retail installment contract.

21. In the event this Sales Agreement is canceled pursuant to paragraph 20 above, Buyer's trade-in, if any, shall be returned to Buyer upon payment of a reasonable charge for storage and repairs, if any, or if Buyer's trade-in has been sold by Seller, the amount received therefore, less a selling commission of 15% and any expenses incurred in storing, insuring, conditioning repairing or preparing said vehicle for sale, shall be returned to Buyer.

22. Any representation or express warranty made in connection with this sale shall be in writing to be valid and enforceable.

23. Buyer acknowledges that Seller fully disclosed any known defects or repairs in the vehicle being purchased and, to the extent allowed by law, Buyer waives any claims against Seller for damages, penalties or attorney fees for any defects or repairs which are or were unknown to Seller prior to and at the time of execution of this Sales Agreement. Nothing in this paragraph modifies, excludes or disclaims the implied warranty of merchantability or fitness for a particular purpose or remedies for breach of those warranties.

24. To the extent allowed by law, Seller disclaims liability for any consequential, incidental, loss of use, loss of profit, exemplary, special and punitive damages. Nothing in this paragraph modifies, excludes or disclaims the implied warranty of merchantability or fitness for a particular purpose or remedies for breach of those warranties.

25. The vehicle purchased comes with an implied warranty of merchantability, except with regard to particular defects that are disclosed to you. Except for the express warranty set forth in Buyer's Guide, Seller has not given any express warranties. Any warranties by the manufacturer or supplier are theirs, not Seller's and Seller is not liable for them.

26. If any part of this Sales Agreement is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Sales Agreement.

# ARBITRATION AGREEMENT

**THIS AGREEMENT** modifies and is part of that certain Retail Installment Agreement/Sales contract and other agreements (hereinafter collectively referred to as "Contract") entered into on _____10/24/17_____ by and between STEVEN FORD ~~EDDY'S FORD OF AUG~~ (hereinafter referred to as "Dealer") and the person(s) whose signature(s) appear below (hereinafter referred to as "You").

The term "Claim" means any claim, dispute or controversy of any nature (whether based upon contract or tort; common law or equity), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to the Contract including, but not limited to, the negotiation of the terms of the Contract, the negotiation, purchase, sale and financing of the vehicle and any other products or services, the collection of amounts owed pursuant to the Contract and any relationships or transactions that result from the Contract. Claim also includes any dispute or controversy regarding the applicability, validity, and enforceability of this Agreement.

Any Claim, shall be resolved, upon the election of you or Dealer, by binding arbitration pursuant to this Agreement and the applicable rules or procedures of the American Arbitration Association ("AAA"). If the AAA is unable, unwilling or ceases to serve as an arbitration administrator, then such Claim shall be resolved under applicable rules or procedures of the National Arbitration Forum, (800) 474-2371; www.arb-forum.com. The election to arbitrate may be made even if an action has been filed in court, so long as judgment has not been entered. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. You can obtain rules and forms from the AAA, (800) 778-7879; www.adr.org.

Any participatory arbitration hearing that you attend will take place in the state and country where you executed this agreement. To the extent applicable, the fees and expenses paid by you will be dictated by the AAA's Supplementary Procedures for Consumer-Related Disputes. Otherwise on any Claim you submit, you will pay the first $125 of the filing fee. At your request, we will pay the remainder of the filing fee and any other fees charged to you by the arbitration administrator up to a maximum of $650.00, unless such fees are waived by the arbitrator administrator. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statue gives you the right to recover and of these fees or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration, notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor, you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible, unless permitted by law and the arbitrator so rules.

This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C § 1, *et seq.* (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal, except as permitted by the FAA. Judgment upon the award may be entered in any court having jurisdiction.

No class action arbitration may be ordered and there shall be no joinder of parties except for joinder of parties to the same Contract. If any portion of this Agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Agreement, this Agreement shall govern.

**THE PARITES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES FURTHER ACKNOWLEDGE THAT DISCOVERY IS MORE LIMITED IN ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

Dealer _____

EDDY'S FORD OF AUGUSTA
Date

10/24/17

Buyer _____

Buyer _____

**EXHIBIT**

*tabbies* B



# KLENDA AUSTERMAN LLC

### Attorneys at Law

Gary M. Austerman
John V. Wachtel, IV
J. Michael Morris
Jeffrey D. Peier
Scott A. Eads
John B. Gilliam
Gregory B. Klenda
Christopher A. McElgunn
Todd E. Shadid
Chad S. Nelson
◆ Christopher J. Vinduska
David W. Steed
Michelle L. Brenwald
Chasity M. Helm
◆ Michael L. Baumberger
Eric W. Lomas
Aaron J. Good

Aaron C. Boswell
Alex P. Flores
Samuel W. Jones

Of Counsel
Robert W. Kaplan
Carlos J. Nolla-Corretjer
◆ Bryant E. Parker

◆ Licensed also in Missouri

L.D. Klenda (1937-1996)
Bruce W. Zuercher (1931-2008)

1600 Epic Center, 301 N. Main
Wichita, Kansas 67202-4816

Telephone:  (316) 267-0331
Telefacsimile:  (316) 267-0333

www.KlendaLaw.com

July 18, 2018

**VIA EMAIL: tony@lacroixlawkc.com**
Tony LaCroix
LaCroix Law Firm, LLC
406 W 34th Street, Suite 810
Kansas City, Missouri 64111

**VIA EMAIL: jgill@thompsonconsumerlaw.com**
Jose F. Gill
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206

RE:  Miracle Thompson
        2009 Dodge Journey, VIN: 3D4GG67V09T150353

Dear Mr. LaCroix and Mr. Gill,

This law firm represents Eddy's Ford of Augusta in this matter.  Eddy's owned the dealership at the time Miracle Thompson purchased the 2009 Dodge Journey.  According to your June 4, 2018 letter and subsequent conversations, Thompson alleges that Eddy's orally told her the purchase of GAP was required for financing approval.  As explained in more detail below, Eddy's denies the allegation and believes Ms. Thompson has no legally viable TILA claim.

Eddy's denies that its employee told Ms. Thompson the purchase of GAP was required for financing approval.  Eddy's does not require GAP on any of its financed transactions; it is a voluntary product.  Thad Cook, the finance director that closed Ms. Thompson's transaction, has over 17 years experience in F&I.  He is well aware of the rules concerning finance charges and does not tell customers that GAP is required.  He recalls the Thompson transaction and did not tell her GAP was required.  In addition, the finance company to which the Retail Installment Contract was assigned, Lead Financial Services, LLC, did not require GAP for approval.  In short, the information and circumstances surrounding this transaction contradicts Thompson's allegation.

Moreover, when Thompson purchased the Dodge Journey from Eddy's, she signed two separate documents acknowledging that GAP was an optional product and not required for financing approval.  The Retail Installment Contract and Security Agreement, Thompson signed has a specific section for additional products such as GAP.  This section contains the following language in bold type:

EXHIBIT

C

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision and are not a factor in the terms of credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sing and agree to pay the additional cost.**

Ms. Thompson signed this section. A copy of the Retail Installment Contract is enclosed.

Ms. Thompson also signed the GAP Addendum. Above her signature in bold all-caps, the following appears:

> **YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS COVERED VEHICLE.**

A copy of the GAP Addendum is enclosed.

As you know, Ms. Thompson is bound by the terms of the two agreements she signed. As you also know, when there is a written agreement parol evidence of oral statements or representations which led up to the agreement is inadmissible. *Edwards v. Phillips Petroleum Co.*, 187 Kan. 656, 659 (1961). Although fraudulent representations are an exception to the parol evidence rule, this exception does not apply when the representation is directly contradicted by the terms of the written agreement. "Parol evidence is inadmissible when the alleged fraud concerns a promise or representation directly at variance with the terms of the written instrument." *Jack Richards Aircraft Sales, Inc. v. Vaughn*, 203 Kan. 967, 974 (1969). . Here, the the alleged oral representation - the purchase of GAP is required - is directly contradicted by the terms of both agreements Ms. Thompson signed. Consequently, the fraud exception to the parol evidence rule does not apply and the alleged oral representation is not admissible. As a result, Thompson cannot sustain a TILA claim.

Finally, Ms. Thompson signed an Arbitration Agreement as part of the vehicle purchase. Ms. Thompson's allegation and purported TILA claim against Eddy's is within the scope of the Arbitration Agreement. A copy of the Arbitration Agreement is enclosed.

If you have any questions or wish to discuss this matter further, please let us know.

Very truly yours,

Todd E. Shadid

Enclosures

**KS-102 10/31/2010**

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| EDDY'S FORD OF AUGUSTA<br>10004 SW HWY 54<br>Augusta, KS 67010 | MIRACLE LSHAUN THOMPSON<br>311 OAK #2 STREET<br>NEWTON, KS 67114 | No.<br>Date | 10/24/17 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 19.950 % | $ 4,166.71 | $ 11,976.05 | $ 16,142.76 | $ 1,000.00<br>$ 17,142.76 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 36 | $ 448.41 | MONTHLY, BEGINNING    12/08/17 |
| | $ N/A | |
| | $ N/A | |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of the lesser of 5% of the unpaid amount of the payment due or $25.00.

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2009 | DODGE | JOURNEY | FWD 4DR R/T | 3D4GG67V09T150353 | 105,382 |

☐ New
☒ Used
☐ Demo

Other:

## Description of Trade-In

## Conditional Delivery

☒ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: _____ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Itemization of Amount Financed

until paid in full. If goods are delivered or services performed more than 10 days after the contract date, finance charges will begin to accrue on the date of delivery or performance.

Finance charges accrue on a _____365_____ day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of
$ _____N/A_____ if you pay this Contract in full before we have earned that much in finance charges.

## Conditional Delivery

[XX] **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____
_____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Itemization of Amount Financed

| | | |
|---|---|---|
| a. Cash Price of Vehicle, etc. (incl. sales tax of $ 776.05 ) | $ | 9,275.05 |
| b. Trade-in allowance | $ | N/A |
| c. Less: Amount owing, paid to (includes k): | | |
| | $ | N/A |
| d. Net trade-in (b-c; if negative, enter $0 here and enter the amount on line k) | $ | 0.00 |
| e. Cash payment | $ | 1,000.00 |
| f. Manufacturer's rebate | $ | N/A |
| g. Deferred down payment | $ | N/A |
| h. Other down payment (describe) | | |
| | $ | N/A |
| i. Down Payment (d+e+f+g+h) | $ | 1,000.00 |
| j. Unpaid balance of Cash Price (a-i) | $ | 8,275.05 |
| k. Financed trade-in balance (see line d) | $ | N/A |
| l. Paid to public officials, including filing fees | $ | 4.00 |
| m. Insurance premiums paid to insurance company(ies) | $ | N/A |
| n. Service Contract, paid to: Allstate Service Contact | $ | 2,599.00 |
| o. Document Fee | $ | 399.00 |
| p. EQUI-PRO GAP | $ | 699.00 |
| q. _____ | $ | N/A |
| r. _____ | $ | N/A |
| s. _____ | $ | N/A |
| t. _____ | $ | N/A |
| u. _____ | $ | N/A |
| v. Total Other Charges/Amts Paid (k thru u) | $ | 3,701.00 |
| w. Prepaid Finance Charge | $ | N/A |
| x. Amount Financed (j+v+w) | $ | 11,976.05 |

We may retain or receive a portion of any amounts paid to others.

## Insurance Disclosures

Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
[ ] Single   [ ] Joint   [XX] None
Premium $ N/A          Term _____
Insured _____

**Credit Disability**
[ ] Single   [ ] Joint   [XX] None
Premium $ N/A          Term _____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _MIRACLE LSHAUN THOMPSON_     DOB _____

By: _____     DOB _____

---

Truth-in-Lending Disclosure. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

Down Payment. You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

[ ] You agree to make deferred down payments as set forth in your Payment Schedule.

[ ] Minimum Finance Charge. You agree to pay a minimum finance charge of $ N/A                                if you pay this Contract in full before we have earned that much in finance charges.

[X] Apply Kansas UCCC. Although the Kansas Uniform Consumer Credit Code may not otherwise apply, you agree with us that this Contract is a consumer credit transaction, and therefore, it is subject to the Kansas UCCC, including the permissible rates and charges.

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

[X] **Service Contract**
Term      24 MOS / 24,000 MILES
Price      $ 2,599.00
Coverage  Allstate Service Contact

[X] **Gap Waiver or Gap Coverage**
Term      36 MOS
Price      $ 699.00
Coverage  EQUI-PRO GAP

[ ]
Term _____
Price $ N/A
Coverage _____

By: _MIRACLE LSHAUN THOMPSON_        Date 10/24/17

By: N/A                              Date 10/24/17

By: _____           Date _____

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: _MIRACLE LSHAUN THOMPSON_        Date 10/24/17

By: _____           Date 10/24/17

By: _____           Date _____

**NOTICE TO CONSUMER. 1.** Do not sign this agreement before you read it. **2.** You are entitled to a copy of this agreement. **3.** You may prepay the unpaid balance at

## Insurance Disclosures

Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☒ None   N/A

Premium $ _____   Term _____

Insured _____

**Credit Disability**

☐ Single   ☐ Joint   ☒ None   N/A

Premium $ _____   Term _____

Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _MIRACLE I.SHAUN THOMPSON_   DOB _____

By: _____   DOB _____

By: _____   DOB _____

**Property Insurance.** You must insure the Property. You may purchase the required insurance from any insurance company you choose or provide it through an existing policy owned or controlled by you, if the insurance and insurance company are reasonably acceptable to us. The collision coverage deductible may not exceed

$ _____N/A_____ . If you get insurance from or through us you will pay

$ _____ for _____ of coverage.

This premium is calculated as follows:   N/A

☐ $ ____N/A____ Deductible, Collision Cov. $ ____N/A____

☐ $ _____ Deductible, Comprehensive $ __N/A__

☐ Fire-Theft and Combined Additional Cov. $ ____N/A____

☐ _____

Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company you choose that is reasonably acceptable to us. You may also provide the insurance through an existing policy. If you buy the coverage from or through us, you will pay

$ _____ for _____ of coverage.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of

$ _____19.95_____ plus finance charges accruing on the unpaid

balance at the rate of _____ % per year from the date of this Contract

By: _____   Date _____

### Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

### Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: _MIRACLE I.SHAUN THOMPSON_   Date 10/24/17

By: _____   Date 10/24/17

By: _____   Date _____

**NOTICE TO CONSUMER. 1.** Do not sign this agreement before you read it. **2.** You are entitled to a copy of this agreement. **3.** You may prepay the unpaid balance at any time without penalty.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

Buyer: _MIRACLE I.SHAUN THOMPSON_   10/24/17

By: _____   Date 10/24/17

By: _____   Date 10/24/17

By: _____   Date _____

Seller

By: _____   Date _____

LEAD FINANCIAL SERVICES, LLC

**Assignment.** This Contract and Security Agreement is assigned to _____, the Assignee, phone (316)943-1000. This assignment is made ☐ under the terms of a separate agreement made between the Seller and Assignee. ☐ under the terms of the *Assignment by Seller* section on page 2. ☐ This Assignment is made with recourse.

Seller   10/24/17

By: _____

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES

## Additional Terms of the Sales Agreement

**Definitions.** "*Contract*" refers to this Retail Installment Contract and Security Agreement. The pronouns "*you*" and "*your*" refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns "*we*", "*us*" and "*our*" refer to the Seller and any entity to which it may transfer this Contract. "*Vehicle*" means each motor vehicle described in the *Description of Property* section. "*Property*" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from us, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "*Total Sale Price*" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If any scheduled payment is more than twice as large as the average of your earlier scheduled payments, you may refinance that payment when due without penalty. The terms of the refinancing will be no less favorable to you than the original terms of this Contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**Insufficient Check Service Charge.** If you give us an insufficient check in payment of this Contract, you agree to pay a service charge to the extent permitted by law. This service charge will be $10.00 or, if we give you any notice of demand in the manner required by law, $30.00.

**Governing Law and Interpretation.** This Contract is governed by the law of Kansas and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** From time to time you agree we may monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to make a payment as required by this Contract.
- The prospect of payment, performance, or realization of the Property is significantly impaired.

If you default, you agree to pay our court costs, attorneys' fees and reasonable expenses incurred in realizing on the Property securing this Contract. The costs of collection will not include costs that were incurred by a salaried employee of ours, will not include recovery of both attorneys' fees and collection agency fees and will not be in excess of 15% of the unpaid debt after default.

If an event of default occurs as to any of you, we may exercise our remedies against one or all of you.

**Remedies.** If you are in default on this Contract, we may exercise the remedies provided by law and this Contract after we give you any notice and opportunity to cure your default that the law requires. Those remedies include:

- After we give you any notice and opportunity to cure your default that the law requires, we may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and

**RECOVERY HEREUNDER. THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

In this section only, "*you*" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

_____

By:                                              Date

## Assignment by Seller

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract.

(Separate Agreement. If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

- This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
- The statements contained in this Contract are true and correct.
- The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to Buyer by Seller or Seller's representatives.
- This sale was completed in accordance with all applicable federal and state laws and regulations.
- This Contract is valid and enforceable in accordance with its terms.
- The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
- This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
- A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
- The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
- Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of nonpayment or nonperformance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compromise or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

Unless otherwise indicated on page 1, this Assignment is without recourse.

With recourse. If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to make a payment as required by this Contract.
- The prospect of payment, performance, or realization of the Property is significantly impaired.

If you default, you agree to pay our court costs, attorneys' fees and reasonable expenses incurred in realizing on the Property securing this Contract. The costs of collection will not include costs that were incurred by a salaried employee of ours, will not include recovery of both attorneys' fees and collection agency fees and will not be in excess of 15% of the unpaid debt after default.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we may exercise the remedies provided by law and this Contract after we give you any notice and opportunity to cure your default that the law requires. Those remedies include:

- After we give you any notice and opportunity to cure your default that the law requires, we may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so, provided we give you prior notice and a reasonable opportunity to perform. We are not required to make any such payments or repairs. You will repay us that amount when we tell you to do so. The amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
- After we give you any notice and opportunity to cure your default that the law requires, we may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- After we give you any notice and opportunity to cure your default that that the law requires, we may immediately take possession of the Property by legal process or self-help, but in doing so we may not enter into a dwelling, use force or otherwise breach the peace.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.

---

including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of nonpayment or nonperformance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compromise or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

**Unless otherwise indicated on page 1, this Assignment is without recourse.**

**With recourse.** If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** To the extent permitted by law, you agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property, provided we give you prior notice and a reasonable opportunity to perform. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.

269 1334    1441 5B

## GAP Addendum

This Guaranteed Asset Protection (GAP) Addendum (Addendum) amends the Financing Contract.
This GAP Addendum is between the Customer/Borrower (I, You or Your) and the Dealer/Creditor (We, Us, or Our),
or if assigned, with the assignee.

**V1-00215495**

| Customer/Borrower | | | Dealer/Creditor | | |
|---|---|---|---|---|---|
| MIRACLE L THOMPSON | | | Eddy's Ford Of Augusta | | |
| **Address** | | | **Address** | | |
| 311 OAK  #2 STREET | | | 9955 SW Diamond Rd | | |
| **City** | **State** | **Zip** | **City** | **State** | **Zip** |
| NEWTON | KS | 67114 | Augusta | KS | 67010 |
| **Phone** | **eMail** | | **Phone** | **Contact** | |
| 316-227-0010 | | | | Thad Cook | |

| Covered Vehicle | Make | Model | VIN | APR% | Primary Insurance Deductible |
|---|---|---|---|---|---|
| 2009 | DODGE | JOURNEY R/T | 3D4GG67V09T150353 | 19.95 | $0.00 |

| Date of Financing Contract | Total Down Payment | Lender/Financial Institution | | |
|---|---|---|---|---|
| 10/24/2017 | $ | LEAD FINANCIAL SERVICES, LLC | | |
| | | **Address** | | |
| | | 114 N. WEST ST. | | |
| **MSRP/NADA** | **Amount Financed** | **City** | **State** | **Zip** |
| $8,991.00 | $11,976.05 | WICHITA | KS | 67203-0000 |
| **Purchase/Cap Cost** | **Your Charge for GAP Addendum** | **Phone** | **Contact** | |
| $8,499.00 | $699.00 | 316-943-1000 | | |

| 36 Term of GAP | 36 Term of Financing Contract | _____ Balloon Contract | ✓ Loan | _____ Lease |
|---|---|---|---|---|
| Finance Benefit Limit %: 150% | Maximum Term of GAP: 84 Mos. | Mileage 105,382 | For Administrative Purposes CLASS: | E |

You have voluntarily elected to purchase this Addendum which amends Your Financing Contract. This Addendum is not considered insurance and does not take the place of insurance on the Covered Vehicle. You are responsible for insurance required by the Financing Contract or applicable state law. You are responsible for handling all notifications or insurance claims that are required to be filed with Your Primary Carrier.

In the event of a Constructive Total Loss to the Covered Vehicle, the GAP Amount will be Waived pursuant to all of the terms and conditions of this Addendum. You will remain responsible for payment of any items not included in the GAP Amount.

All Benefit requests must be submitted and required documentation provided to the GAP Administrator within ninety (90) days of settlement from an insurance carrier; or if no insurance coverage is in effect on the Date of Loss, within ninety (90) days of the accident, theft or discovery of loss. No GAP Amount will be Waived if the Benefit request is not submitted and required documentation provided within these stated time periods. BENEFIT REQUEST PROCEDURES:  In the event of a Constructive Total Loss, You must provide a copy of all the following, if applicable, to the GAP Administrator shown below. 1. Vehicle valuation statement; 2. Estimate of damage; 3. Insurance settlement check; 4. Automobile insurance policy declaration page; 5. Original Financing Contract including this Addendum; 6. Payoff from the Lender as of the Date of Loss; 7. Loan history; 8. Accident/police report; 9. Fire report (if applicable); and/or 10. Any additional reasonable documentation requested by the Dealer/Creditor or the GAP Administrator to include, but not limited to, a sworn proof of loss, and/or examination under oath.

YOU MAY PURCHASE THIS ADDENDUM ONLY AT THE TIME THE FINANCING CONTRACT IS ORIGINALLY EXECUTED.  BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS COVERED VEHICLE. The GAP Amount may decrease over the term of Your Financing Contract and may not extend for the full term of Your Financing Contract. You may wish to consult an alternative source to determine whether similar Benefits may be obtained and at what cost. You acknowledge that this Addendum supersedes any other representations made. If You purchase this Addendum from this Dealer/Creditor, You understand that the Dealer/Creditor may retain all or a portion of the charge paid by You. This Addendum includes a binding arbitration clause. You acknowledge that you have read and understand the entire Addendum and its terms and conditions which may reduce or prevent you from receiving all or part of the Benefits due under this Addendum.

☒ Yes, I accept this GAP addendum and its terms and Conditions.

**DEALER/CREDITOR**

by _____  date _____

title _____

**CUSTOMER/BORROWER**

By _____  date _____

MIRACLE L THOMPSON

print name

**Equi-pro**

FP2891 0417-GAP150

REPORT YOUR CONSTRUCTIVE TOTAL LOSS TO THE
GAP ADMINISTRATOR:
Oak Services II, LLC.
P.O. Box 3338
Oak Brook, IL  60522-3338
877-211-7750

Page 1

Administrator: White          Seller: Yellow          Financial Institution: Pink          Customer: White

**YOUR RIGHT TO CANCEL**   You have the unconditional right to cancel this optional Addendum for a refund/credit of the unearned portion of the charge for this Addendum at any time. If any cancellation occurs within thirty (30) days of the Addendum purchase, You will receive a full refund/credit of the Addendum cost. After thirty (30) days, a refund/credit of the Addendum cost will be calculated by the pro rata method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee. All refund amounts will be returned to the Lender/Financial Institution, unless proof of total payoff of the Financing Contract is provided by You. If You choose to cancel this Addendum, You must request a refund/credit, from the Dealer/Creditor, in writing, at the address shown above. If You do not receive the refund/credit within sixty (60) days of notice of cancellation/termination, contact the GAP Administrator shown above to assist You in obtaining any refund due.

**ASSIGNMENT**   This Addendum will remain a part of the Financing Contract if the Financing Contract or lease is assigned, sold or transferred by the Dealer/Creditor.

**TERMINATION OF ADDENDUM**   This Addendum will terminate on the date Your Financing Contract is scheduled to terminate and no refund will be due. A refund may be due if the Addendum terminates for reasons including but not limited to: 1. Payment in full of the Financing Contract; 2. Expiration of any redemption period following the repossession or surrender of the Covered Vehicle; 3. In the event of a Constructive Total Loss or theft of the Covered Vehicle; or 4. The date the Financing Contract is refinanced. You must request a refund, in writing, except where prohibited by law, from the Dealer/Creditor for any terminating event.

**DEFINITIONS**

**Actual Cash Value (ACV)** –The retail value of the Covered Vehicle, on the Date of Loss, as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or, at the GAP Administrator's discretion, the GAP Administrator may use an equivalent national or regional guide for the territory in which the Covered Vehicle is principally garaged. For a Covered Vehicle which has no retail value available, or is located in territories where NADA or an equivalent national or regional guide is not customarily used, ACV will be determined using the best information available to the GAP Administrator, which accurately reflects the retail value of the Covered Vehicle and is customarily used as the basis for establishing ACV for a Covered Vehicle in the territory of the Covered Vehicle's location.

**Benefit** - The amount which the Dealer/Creditor is obligated to Waive under the definition of GAP Amount and pursuant to all of the terms and conditions of this Addendum.

**Constructive Total Loss** – A direct and accidental loss of or damage to Covered Vehicle, which meets one of these criteria: 1. the total cost to repair the Covered Vehicle is greater than or equal to the ACV of the Covered Vehicle immediately prior to the Date of Loss; or 2. the Covered Vehicle is stolen and is not recovered within thirty (30) days from the date a police report was filed, and an insurance carrier declares the Covered Vehicle a Constructive Total Loss. In the case there is no primary insurance coverage, the Covered Vehicle must be available for the GAP Administrator's inspection or appraisal to determine if the Covered Vehicle is a Constructive Total Loss. You will not be held responsible for any inspection cost. If the Covered Vehicle is not available for inspection or appraisal the GAP Amount will not be Waived except when the Constructive Total Loss is due to unrecovered theft and a police report has been filed. In the event of a theft where the Covered Vehicle is recovered and returned to the Customer/Borrower after thirty (30) days, any GAP Amount that has been Waived shall be returned to the Lender/Financial Institution.

**Covered Vehicle** – Any four-wheel private passenger automobile, van, or light truck, as described in the Financing Contract, utilized for personal purposes and which is not otherwise excluded from coverage within this Addendum.

**Customer/Borrower (I, You or Your)** – The person(s) named in the Financing Contract receiving a Financing Contract from the Lender/Financial Institution.

**Date of Loss** – The date on which the Covered Vehicle is stolen or incurs physical damage that is severe enough to constitute a Constructive Total Loss.

**Dealer/Creditor** - The entity originating the Financing Contract and who may assign, sell or transfer the Financing Contract to a Lender/Financial Institution.

**Delinquent Payment** – Any payment, which is paid after the due date stated in the Financing Contract. The Delinquent Payment will be determined as of and limited to amounts past due on the Date of Loss.

**Finance Benefit Limit** - The Manufacturer's Suggested Retail Price (MSRP) for new vehicles or the NADA retail value for used vehicles multiplied by the Finance Benefit Limit percentage as stated in this Addendum.

**Financing Contract** – the financing agreement, loan agreement, retail installment contract, or lease agreement, between the Customer/Borrower and the Dealer/Creditor. Such agreement may be assigned, transferred to or purchased by a Lender/Financial Institution for the purchase or lease of the Covered Vehicle.

**GAP Administrator** - The entity designated by the Dealer/Creditor to perform administrative services for this Addendum.

**GAP Amount** - The GAP Amount is the difference between the Net Payoff on the Date of Loss and the Primary Carrier settlement but not to exceed $50,000. The GAP Amount includes the amount of Your physical damage deductible on the Primary Carrier's policy up to $1,000. In the event there is no Primary Carrier coverage in effect on the Date of Loss, or the Primary Carrier denies coverage or is declared insolvent, or if the Primary Carrier policy limits are less than the Actual Cash Value of the Covered Vehicle, the Lender/Financial Institution will only Waive the difference between the Net Payoff as of the Date of Loss and the Actual Cash Value.

**Lender/Financial Institution** - The entity to whom the Dealer/Creditor assigns, sells, or transfers the Financing Contract.

**Net Payoff** – The amount, as of the Date of Loss, as represented by the portion of the Customer/Borrower's unpaid balance according to the original payment schedule of the Financing Contract that is secured by collateral pursuant to all of the terms and conditions of this Addendum. The Net Payoff does not include any unearned finance charges; lease or Financing Contract charges; late charges; any Delinquent Payments; deferred payments; uncollected service charges; refundable prepaid taxes and fees; disposition fees; termination fees; penalty fees; the recoverable portion of financed insurance charges; or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service contracts warranties and guaranteed asset protection charges) that are owed by the Customer/Borrower on the Date of Loss; and amounts that are added to the Financing Contract balance after the inception date of the Financing Contract. On a Financing Contract or lease that does not have Uniform Monthly Payment terms, unless Balloon or Lease is checked on the front of the Addendum, for the full period of the Financing Contract, the Net Payoff amount will be determined as if all payments were distributed evenly on a monthly basis, over the full term of the Financing Contract, and using the original amount financed, interest rate and monthly payment. In the event the amount financed exceeds the Finance Benefit Limit at inception date of the Addendum, the Net Payoff will be reduced by the percentage the original amount financed exceeds the Finance Benefit Limit. If the Financing Contract exceeds the Maximum Term of GAP, the Net Payoff will be calculated using the Maximum Term of GAP.

**Primary Carrier** – The insurance company that is selected by the Customer/Borrower to provide physical damage coverage on the Covered Vehicle; or provides liability coverage to any individual who has caused Your vehicle to incur a Constructive Total Loss. For the purposes of this Addendum, insurance that is forced

placed, after the Date of Loss, is not considered a Primary Carrier.

**Self-financed** – A loan/financing contract/lease that is funded and retained by the selling dealer or an affiliate.

**Settlement Date** - The date the insurance carrier issues payment for the Customer/Borrower's Covered Vehicle for the Constructive Total Loss.

**Uniform Monthly Payment** - Installment payments that are equal in amount, except first and final payment, and are due at equal monthly intervals.

**Waive** - The cancelling of a debt due on Customer/Borrower's Financing Contract pursuant to all of the terms and conditions of this Addendum.

## EXCLUSIONS

**A)  Benefits shall not be provided upon the occurrence of a Constructive Total Loss:**

1.  when a date of loss is prior to the date of the Addendum.
2.  for any amounts deducted from the insurance carrier's settlement due to wear and tear, prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.
3.  to a vehicle used for commercial purposes including but not limited to transportation of persons or property for hire, compensation, profit, or in the furtherance of a commercial enterprise which includes but is not limited to one or more of the following: 1. a business name is permanently displayed or the vehicle; 2. vehicle is declared or deducted on federal income tax as a business vehicle; and 3. the primary insurance for the vehicle is a Business Auto Policy or Commercial Vehicle Policy.  Share-the-expense car pools are not considered a commercial purpose.
4.  when a Constructive Total Loss occurs during or after confiscation of Covered Vehicle by a government body or public official.
5.  when a Constructive Total Loss is caused by theft, where an accident/police report has not been filed.
6.  when a Constructive Total Loss is a result of  being operated, used, or maintained in any race, speed contest, or other contest.
7.  when a Constructive Total Loss occurs during or after the Covered Vehicle has been repossessed by a **Lender/Financial Institution** or placed in the **Lender/ Financial Institution's** or its employee's or agent's possession.
8.  when a Constructive Total Loss results directly or indirectly from any fraudulent, deceptive, illegal, or criminal act by You, whether acting alone or in collusion with others.
9.  when a Constructive Total Loss may reasonably be expected to result from intentional or criminal acts of a **Customer/Borrower** or their permissive user while committing a felony, including but not limited to DUI/DWI, or while seeking to elude lawful apprehension or arrest by a law enforcement official.  No GAP Amount will be Waived until the charge has been dismissed or adjudicated not guilty.
10.  when a Constructive Total Loss occurs prior to a final Financing Contract approval.
11.  unless a Constructive Total Loss occurs within:  1. the United States of America, its territories or possessions; 2. Canada; or 3. being transported between any of the previously stated.

**B)  Benefits shall not be provided for the following items:**

1.  when the Customer/Borrower purchased coverage after the effective date of the Financing Contract.
2.  the following vehicles which are excluded from coverage:  any vehicle in excess of 12,500 lbs GVWR,  Daewoo, Bentley, Lamborghini, Lotus, Maserati, Ferrari, Rolls Royce, Yugo, Aston Martin, RV's, boats,  ATV's, snowmobiles, motorcycles, and trailers.
3.  for any vehicle  with a salvage or rebuilt title as of the effective date of the Finance Contract, or for which title has been changed or re-issued as salvage or rebuilt prior to the Date of Loss.
4.  to special carpeting, furniture, bars, audio, video, or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap, trailers, special commercial usage optional equipment, accessories and body components.  This exclusion does not include:  factory approved conversion packages and dealer installed options usually included in used car value guidebooks or attributable to standard or optional equipment available from the manufacturer of the Covered Vehicle.
5.  a vehicle with a Manufacturer's Suggested Retail Price (MSRP) or NADA retail value of more than $100,000, or if the Amount Financed exceeds $100,000.
6.  a Financing Contract or lease that is Self-Financed.
7.  a vehicle classified as a lemon and has not been corrected.
8.  a Financing Contract that requires the first payment to be made more than fifty-two (52) days from the date of the Financing Contract.
9.  A Financing Contract or lease that is funded and retained by the selling **Dealer/Creditor** or an affiliate of the **Dealer/Creditor** unless the financial institution is authorized by the GAP Administrator to offer a GAP Addendum on a Financing Contract.

**ARBITRATION**   It is understood and agreed that the transaction evidenced by this Addendum takes place in and substantially affects interstate commerce.  All disputes between the parties are subject to binding arbitration, including disputes concerning the arbitrability of disputes, disputes related to the making or administration of this Addendum, disputes regarding recovery of any Benefit or refund under this Addendum, and disputes arising out of or relating in any way to the sale or marketing of this Addendum.  In the first instance, the parties agree to attempt to resolve any dispute through informal negotiation.  The parties agree to contact each other  about a dispute before initiating any legal action.  If the parties are unable to resolve any dispute through informal negotiations, the parties agree to submit all disputes to arbitration under the Commercial Arbitration Rules of the American Arbitration Association (AAA) in effect at the time the dispute arises.  All preliminary issues of arbitrability of any dispute will be decided by the arbitrator.

1.  The arbitration shall take place in Your county of residence unless another location is mutually agreed upon by the parties.  The arbitration shall take place before a single arbitrator selected in accordance with the AAA Commercial Arbitration Rules.  AAA rules and forms may be obtained and all claims shall be filed at www.adr. org. or at any AAA office.
2.  The cost of the arbitration proceeding, including the filing fee, shall be borne by Us.  Each party must bear the cost of its own attorneys, experts, witness fees, and other arbitration-related expenses.
3.  It is understood and agreed that the arbitration shall be binding upon the parties.  The parties acknowledge that they are waiving their right to seek remedies in court, including the right to a jury trial.  YOU UNDERSTAND THAT YOU ARE AGREEING THAT IF A DISPUTE ARISES BETWEEN YOU AND US, YOU WILL NOT SUE US IN COURT, YOU ARE NOT ENTITLED TO A JURY TRIAL ON ANY CLAIMS ARISING IN RELATION TO THIS AGREEMENT, AND THAT AN ARBITRATOR WILL RESOLVE ANY DIFFERENCES THAT MAY ARISE BETWEEN YOU AND US.  The arbitrator shall be prohibited from awarding punitive, consequential, special, incidental, and exemplary damages.  The arbitrator may award a party only its actual damages and the arbitrator may award equitable relief including injunctive relief.  You agree not to participate as a representative or member of any class of claimants proceeding against Us in a judicial forum or in an arbitral forum.  An arbitration award may not be set aside in later litigation except upon the limited circumstances set forth in the Federal Arbitration Act, 9 U.S.C. §1 et. Seq.  An award in arbitration will be enforceable under the Federal Arbitration Act by any court having jurisdiction.
4.  All limitations periods that would otherwise be applicable shall apply to any arbitration proceedings.

 

If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force.  In the event of a conflict or inconsistency between this Arbitration Provision and the other terms and conditions of this Addendum or any prior agreement, this Arbitration Provision shall govern. This Arbitration Provision shall be governed by the Federal Arbitration Act.

**FRAUD AND MISREPRESENTATION**    This Addendum is issued in reliance upon the truth of all representations made by You.  A GAP Amount will not be Waived as to any Financing Contract where You: 1. Intentionally concealed or misrepresented any material fact; 2. Engaged in fraudulent conduct; or 3. Made a false statement relating to submitting a Benefit request.  If You have concealed or misrepresented any material fact(s) concerning this coverage, or in case of fraud, attempted fraud, or the false swearing by affecting any matter relating to this coverage, whether before or after the Benefit request, this Addendum may be voided and all charges will be returned.  All refunds are the responsibility of the Dealer/Creditor.

## STATE PROVISIONS

**Illinois:**  Exclusion A9 is amended as follows:  "DUI/DWI, or"  is deleted.

**Kansas, Indiana, Louisiana, Missouri, New Mexico, Vermont and Wisconsin:**  The cancellation fee is not applicable.

**Kansas:**  The EXCLUSIONS SECTION is amended by deleting exclusion A8. GAP coverage may not cancel or waive the entire amount owing at the time of loss. "Actual Cash Value" as the value established by the primary insurance carrier, if there is no primary insurance coverage at the time of loss, the market value of the vehicle will be determined by the NADA Official Used Car Guide or equivalent. If you have any questions or complaints contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603,(785)296-2266 or toll free 1-877-387-8523

**Louisiana:**  Exclusion A2 is amended as follows: "wear and tear" is deleted.

**Minnesota:** You have the unconditional right to cancel this optional Addendum for a refund/credit of the unearned portion of the charge for this Addendum at any time. If any cancellation occurs within thirty (30) days of the Addendum purchase You will receive a full refund/credit of the Addendum cost, so long as no benefits have been provided. After thirty (30) days, a refund/credit of the Addendum cost will be calculated by the pro rata method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee. All refund amounts will be returned to the Lender, unless proof of total payoff of the Financing Contract is provided by You. If You choose to cancel this Addendum, You must request a refund/credit, from the Dealer/Creditor, in writing, at the address shown above. If You do not receive the refund/credit within sixty (60) days of notice of cancellation/termination contact the GAP Administrator shown above to assist You in obtaining any refund due. Terms defined in this Amendment have the meanings set forth in your Addendum. This Amendment does not vary, alter, waive or extend any of the terms, conditions or limitations of the Addendum to which this Amendment is attached other than as stated above. This Amendment is subject to the provisions of the Addendum to which it is attached except where amended by this Amendment.

**Nebraska:**  This Addendum is not regulated by the Department of Insurance.

**Tennessee:**  The cost of this Addendum is not regulated and You have the responsibility to determine whether the cost of this Addendum is reasonable in relation to the protection afforded by this Addendum.

**Utah:**  This Addendum is subject to limited regulation by the Utah Insurance Commissioner and a complaint regarding this Addendum may be submitted to the Commissioner at the Utah Department of Insurance, State Office Building, Room 3110, Salt Lake City, UT 84114.

**Vermont:**  We must assign, sell or transfer, within fifteen (15) business days, the Financing Contract to a Lender/Financial Institution as defined in subdivision 11101(32) of Title 8 or a credit union or entity licensed under subdivision 2201(a)(1) or (3) of Title 8 or this Addendum is void and You will receive a full refund of the charges of this Addendum.

**Washington:**  1.  Any refund of the purchase price for an Addendum that was included in the financing of the Covered Vehicle or vessel may be applied by the Lender/Financial Institution as a reduction of the overall amount owed under the Financing Contract, rather than applying the refund strictly to the GAP charge for this Addendum.  2.  The Guaranteed Asset Protection Addendum is not credit insurance, nor does it eliminate the Customer/Borrower's obligation to insure the Covered Vehicle as provided by laws of this state. Purchasing a GAP Addendum does not eliminate the Customer/Borrower's rights and obligations under the vendor single-interest and collateral protection coverage laws of this state.  3.  The sentence "All preliminary issues of arbitrability of any dispute will be decided by the arbitrator." is deleted from the Arbitration section.

**Wisconsin:**  1. The Arbitration Provision is amended as follows: the following four sentences are deleted: a) "In the first instance, the parties agree to attempt to resolve any dispute through informal negotiation." b) "The parties agree to contact each other about a dispute before initiating any legal action."  c) "All preliminary issues of arbitration will be decided by the arbitrator." and d) "The arbitrator shall be prohibited from awarding punitive, consequential, special, incidental, and exemplary damages."  2. Class Action or any other collective or representative claims are not prohibited under this Provision.  If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision will remain valid to the extent not prohibited by the Wisconsin Consumer Act.  3.  A cancellation refund within the first thirty (30) days will also include the amount of the applicable finance charge. 4.  TERMINATION OF ADDENDUM section is amended as follows. The last sentence, "You must request a refund, in writing, except where prohibited by law, from the Dealer/Creditor for any terminating event." is deleted.  5. The following sentence is deleted "You acknowledge that this Addendum supersedes any other representation made" and is replaced with "This Addendum is intended to be the complete and final statement of the terms and conditions governing the relationship between You and the Dealer/Creditor."

# ARBITRATION AGREEMENT

**THIS AGREEMENT** modifies and is part of that certain Retail Installment Agreement/Sales contract and other agreements (hereinafter collectively referred to as "Contract") entered into on _____10/24/17_____ by and between STEVEN FORD EDDY'S FORD OF AUG (hereinafter referred to as "Dealer") and the person(s) whose signature(s) appear below (hereinafter referred to as "You").

The term "Claim" means any claim, dispute or controversy of any nature (whether based upon contract or tort; common law or equity), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to the Contract including, but not limited to, the negotiation of the terms of the Contract, the negotiation, purchase, sale and financing of the vehicle and any other products or services, the collection of amounts owed pursuant to the Contract and any relationships or transactions that result from the Contract. Claim also includes any dispute or controversy regarding the applicability, validity, and enforceability of this Agreement.

Any Claim, shall be resolved, upon the election of you or Dealer, by binding arbitration pursuant to this Agreement and the applicable rules or procedures of the American Arbitration Association ("AAA"). If the AAA is unable, unwilling or ceases to serve as an arbitration administrator, then such Claim shall be resolved under applicable rules or procedures of the National Arbitration Forum, (800) 474-2371; www.arb-forum.com. The election to arbitrate may be made even if an action has been filed in court, so long as judgment has not been entered. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. You can obtain rules and forms from the AAA, (800) 778-7879; www.adr.org.

Any participatory arbitration hearing that you attend will take place in the state and country where you executed this agreement. To the extent applicable, the fees and expenses paid by you will be dictated by the AAA's Supplementary Procedures for Consumer-Related Disputes. Otherwise on any Claim you submit, you will pay the first $125 of the filing fee. At your request, we will pay the remainder of the filing fee and any other fees charged to you by the arbitration administrator up to a maximum of $650.00, unless such fees are waived by the arbitrator administrator. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees. The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. If a statue gives you the right to recover and of these fees or the fees paid to the arbitration administrator, these statutory rights shall apply in the arbitration, notwithstanding anything to the contrary contained herein. If the arbitrator issues an award in our favor, you will not be required to reimburse us for any fees we have previously paid to the arbitration administrator or for which we are responsible, unless permitted by law and the arbitrator so rules.

This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C § 1, *et seq.* (the "FAA"). The arbitrator shall apply applicable substantive law consistent with the FAA and provide written reasoned findings of fact and conclusions of law. The arbitrator's award shall not be subject to appeal, except as permitted by the FAA. Judgment upon the award may be entered in any court having jurisdiction.

No class action arbitration may be ordered and there shall be no joinder of parties except for joinder of parties to the same Contract. If any portion of this Agreement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Agreement. In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Agreement, this Agreement shall govern.

**THE PARITES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES FURTHER ACKNOWLEDGE THAT DISCOVERY IS MORE LIMITED IN ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**

Dealer _____

Buyer _____

EDDY'S FORD OF AUGUSTA
Date _____

Buyer _____

10/24/17

 

**Dee Dee Sweet**

| | |
|---|---|
| **From:** | Dee Dee Sweet |
| **Sent:** | Wednesday, July 18, 2018 3:28 PM |
| **To:** | 'tony@lacroixlawkc.com'; 'jgill@thompsonconsumerlaw.com' |
| **Cc:** | Todd E. Shadid |
| **Subject:** | Miracle Thompson - 2009 Dodge Journey |
| **Attachments:** | 16158.pdf |

Gentlemen:

The attached file contains Mr. Shadid's letter of this date to you regarding the above referenced matter.

Dee Dee Sweet
Secretary for Todd E. Shadid
Klenda Austerman LLC
301 N. Main St., Ste. 1600
Wichita KS 67202-4816
(316) 267-0331

-----Original Message-----
From: 15-Workroom
Sent: Wednesday, July 18, 2018 3:22 PM
To: Dee Dee Sweet
Subject: Scanned from a Xerox Multifunction Printer

Please open the attached document. It was sent to you using a Xerox multifunction printer.

Attachment File Type: pdf, Multi-Page

Multifunction Printer Location: Klenda Austerman
Device Name: 15th Workroom

For more information on Xerox products and solutions, please visit http://www.xerox.com

1



**AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

Complete this form to start arbitration under an arbitration agreement in a contract.

| |
|---|
| 1. Which party is sending in the filing documents? *(check one)* ☑ Consumer ☐ Business |
| 2. Briefly explain the dispute:<br><br>See attached complaint<br><br> |
| 3. Specify the amount of money in dispute, if any: $ 2,000 + attorney's fees and costs |
| 4. State any other relief you are seeking:<br>☑ Attorney Fees ☑ Interest ☑ Arbitration Costs ☐ Other; explain: |
| 5. Identify the requested city and state for the hearing if an in-person hearing is held:<br>City: Newton                          State: Kansas |
| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. |

**Consumer:**

| | | |
|---|---|---|
| Name:  Miracle Thompson | | |
| Address:  311 Oak St. Apt. 2 | | |
| City: Newton | State:  Kansas | Zip Code:  67114 |
| Telephone: 316-227-0010 | Fax: | |
| Email Address:  thompsonm0329@gmail.com | | |

**Consumer's Representative (if known):**

| | | |
|---|---|---|
| Name:  Anthony LaCroix | | |
| Firm:  Lacroix Law | | |
| Address:  7406 W. 34th St. Ste. 810 | | |
| City: Kansas City | State:  Missouri | Zip Code:  64111 |
| Telephone:  816-399-4380 | Fax: 866-317-2674 | |
| Email Address:  tony@lacroixlawkc.com | | |

**Business:**

| | | |
|---|---|---|
| Name:  Ford of Augusta, Inc. dba Eddy's Ford of Augusta | | |
| Address:  10004 SW Hwy 54 | | |
| City: Augusta | State:  Kansas | Zip Code:  67010 |
| Telephone:  316-775-3673 | Fax: | |
| Email Address: | | |

**EXHIBIT**



**AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

| Business' Representative (if known): | | |
|---|---|---|
| Name:  Todd E. Shadid | | |
| Firm:  Klenda Austerman | | |
| Address:  1600 Epic Center, 301 N. Main St. | | |
| City:  Wichita | State:  Kansas | Zip Code:  67202 |
| Telephone:  316-290-4644 | Fax:  316-267-0333 | |
| Email Address:  tshadid@klendalaw.com | | |
| Date: | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

## AMERICAN ARBITRATION ASSOCIATION

### In the Matter of Arbitration between

MIRACLE THOMPSON,                          )
                                           )
              Claimant,                     )
                                           )   Case No.
       vs.                                  )
                                           )   **COMPLAINT AND JURY**
FORD OF AUGUSTA, INC. dba                   )   **DEMAND**
EDDY'S FORD OF AUGUSTA,                     )
                                           )
              Respondent.                   )

## NATURE OF ACTION

1.     Claimant, Miracle Thompson ("Claimant"), brings this action against Respondent, Don Hattan Ford, Inc. dba Eddy's Ford of Augusta ("Respondent"), pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing Regulation Z, 12 C.F.R. Part 226 (collectively "TILA").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

3.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Claimant's action occurred in this district.

1



## THE TRUTH IN LENDING ACT

4.      The TILA "has been found uniformly to be remedial in nature and thereby liberally and broadly construed in favor of the consumer." *Travis v. Trust Co. Bank*, 621 F.2d 148, 151 (5th Cir. 1980); *Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir. 1979); *Gardner & N. Roofing & Siding Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 464 F.2d 838, 841 (D.C. Cir. 1972); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009).

5.      The TILA is strictly enforced, and absolute compliance is necessary. *In re Porter*, 961 F.2d 1066, 1078 (3d Cir. 1992) ("A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent."); *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced."); *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976) ("[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability."); *see also Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007); *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 801 (6th Cir. 1996); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986); *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982).

6.     "[S]trict interpretation of the TILA has largely been responsible for the TILA's success in achieving widespread compliance with its requirements." *In re Brown*, 106 B.R. 852, 857 (Bankr. E.D. Pa. 1989). Indeed, without strict compliance, the TILA's goals of standardized uniform disclosures would quickly be eroded. *See Reneau v. Mossy Motors*, 622 F.2d 192, 195 (5th Cir. 1980) ("The technical requirements of the TILA and Regulation Z must be strictly enforced if standardization of terms, permitting meaningful comparisons of available credit by consumers, is to be achieved.").

7.     Creditors must make TILA disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17. If a creditor's disclosure is susceptible to more than one "plausible" interpretation, the creditor has not complied with the TILA. *See Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006); *In re Porter*, 961 F.2d 1066, 1077 (3d Cir. 1992).

8.     This is because the "TILA neither requires nor encourages borrowers to guess or to assume that a disclosure has a particular meaning." *Wright v. Tower Loan of Mississippi, Inc.*, 679 F.2d 436, 445 (5th Cir. 1982); *see also Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 372 (5th Cir. 1976) ("This court . . . is bound by the intent of Congress to eliminate the necessity of assumptions on the part of the consumer.").

9.     The clarity of a creditor's disclosure is question of law, determined on an "ordinary consumer" standard. *Palmer v. Champion Mortgage*, 465 F.3d 24, 28

3

(1st Cir. 2006); *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327–28 (7th Cir. 1999); *Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291, 296 (5th Cir. 1978). Because this standard is objective, what a given consumer knows or does not know is immaterial when evaluating a creditor's TILA disclosures. *See Purtle*, 91 F.3d at 800; *Semar*, 791 F.2d 699, 704 (citing *Huff v. Stewart-Gwinn Furniture Co.*, 713 F.2d 67, 69 (4th Cir.1983)).

### PARTIES

10.     Claimant, is a natural person who at all relevant times resided in the State of Kansas, County of Harvey, and City of Newton.

11.     Respondent is a Kansas corporation that at all relevant times was engaged in the business of selling and financing motor vehicles.

12.     At all relevant times, Respondent, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable.

13.     Respondent is a "creditor" within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. § 226.2(17).

## FACTUAL ALLEGATIONS

14.     On or about September 23, 2017, Claimant visited Respondent's dealership to shop for an automobile to be used for personal, family or household purposes.

15.     Claimant selected a 2009 Dodge Journey (the "Vehicle") and agreed to purchase the Vehicle from Respondent.

16.     To finance the purchase of the Vehicle, Claimant executed a separate retail installment contract (the "Contract") with Respondent, dated September 23, 2017.

17.     During the discussions regarding the transaction, Respondent's employee stated to Claimant that she was required to purchase GAP coverage in order for the financing for the Vehicle to be approved.

18.     Claimant purchased GAP coverage for the Vehicle based upon Respondent's representations that it was required in order to obtain financing.

19.     Claimant would not have purchased GAP coverage but for Respondent's representation that it was required to obtain financing.

20.     The Truth in Lending Disclosure statement provided to Claimant in connection with her purchase disclosed an "annual percentage rate" of 19.950%, a "finance charge" of $4,366.71, and an "amount financed" of $11,976.05.

21.     The "itemization of amount financed" disclosure reflects that Claimant purchased GAP coverage at a price of $699.00 and that this amount was included in the "amount financed."

22.     Upon information and belief, Respondent's employee earned a commission the GAP coverage that Claimant purchased.

23.     Upon information and belief, Respondent itself earned a profit in excess of $200.00 on the GAP coverage that Claimant purchased.

### COUNT I
### VIOLATION OF 15 U.S.C. § 1638(a)(2)

24.     Claimant repeats and re-alleges each and every factual allegation above.

25.     The Truth in Lending Act instructs that the Finance Charge "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 15 U.S.C. § 1605(a), 12 C.F.R. § 226.4(a).

26.     Under the TILA, add-on products like GAP insurance are finance charges, and must be disclosed as such, unless the product is voluntary, and the Creditor makes additional disclosures not at issue here. 12 C.F.R. § 226.4(d).

27.     In interpreting the TILA, special deference must be paid to the Federal Reserve Board's ("FRB") interpretation, because "Congress has specifically designated the [Federal Reserve] Board as the primary source for interpretation and

application of the TILA . . . ." *Hess v. Citibank, (S. Dakota), N.A.*, 459 F.3d 837, 842 (8th Cir. 2006)).

28.   Thus, "[u]nless demonstrably irrational, the Federal Reserve Board's interpretations are dispositive of TILA disputes." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790, 797, 63 L. Ed. 2d 22 (1980).

29.   Moreover, if courts deviate from the strict interpretation of the TILA in search of a more "functional approach," the FRB takes action to overturn the court's decision. *See Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007) (explaining how the Seventh Circuit adopted a hyper technical approach to TILA in response to the FRB's efforts to upend its decision in *Carmichael v. Payment Ctr., Inc.*, 336 F.3d 636, 641 (7th Cir. 2003), and the FRB specifically identifying the court's decision as the impetus for its action).

30.   The FRB, has declared the voluntariness of add-on products, like GAP insurance and extended warranties to be a factual issue ascertainable only "by reference to all of the circumstances of a particular transaction.  Inquiry into these circumstances, of course, is not foreclosed by the presence of a customer's signature on an insurance authorization." Federal Reserve Board Staff Letter of December 20, 1977, No. 1270, Consumer Credit Guide (CCH) ¶ 31,756.

31.   The FRB, in March 1978, elaborated on its guidance as follows:

While the customer's signature on a document would be some evidence of voluntariness, of course, **it would not conclusively establish that the insurance was not required**. Any number of collateral acts or

practices by a creditor could negate the apparently affirmative nature of the customer's election to purchase insurance.

Federal Reserve Board Staff Letter of March 21, 1978, 5 Cons. Cred. Guide (CCH) ¶31,777 (emphasis added).

32.     In light of the FRB's guidance, recitals regarding voluntariness do not establish that a given product was voluntary. *See Garl v. Genesee Valley Auto Mall*, No. 16-13712, 2018 WL 994318, at \*3 (E.D. Mich. Feb. 21, 2018); *Beltran v. USA Auto Inc.*, No. CV-14-02247-PHX-GMS, 2015 WL 12672084, at \*2 (D. Ariz. Feb. 23, 2015) (citing cases); *Robinson v. Carport Sales & Leasing, Inc.*, No. 6:14-CV-1358-ORL-TBS, 2015 WL 224655, at \*3 (M.D. Fla. Jan. 15, 2015) (GAP insurance could be compulsory despite contract stating GAP was voluntary); *Hager v. Am. Gen. Fin., Inc.*, 37 F. Supp. 2d 778, 784 (S.D.W. Va. 1999) (credit life insurance could be required despite language to the contrary in contract); *In re Milbourne*, 108 B.R. 522, 541 (Bankr. E.D. Pa. 1989) ("if a lender does in fact misrepresent to customers that insurance is required, even though the loan contracts unequivocally state that the purchase of insurance is optional, a violation of UDAP and TILA could be established"); *Kaminski v. Shawmut Credit Union*, 494 F. Supp. 723, 729 (D. Mass. 1980) (credit life was not voluntary despite declaration to the contrary); *In re Cruz*, 441 B.R. 23, 33 (Bankr. E.D. Pa. 2004) (credit insurance was mandatory despite notation that it was optional); *Marine Midland Bank v. Burley*, 73 A.D.2d 1041, 1042, 425 N.Y.S.2d 429, 431 (1980); *Matter of Dickson*, 432 F. Supp. 752, 759 (W.D.N.C.

1977) ("whether the insurance was not required . . . of course, is not conclusively established by the statement on the disclosure that it was not required").

33.     To prove that a product is actually compulsory despite contract language to the contrary, a "borrower is obliged to prove that (1) the lender affirmatively represented, by words or by conduct, that [the product] was in fact required; and (2) as a result of the lender's actions, the borrower purchased [a product] that it is likely that (s)he would not have otherwise purchased. *Garl*, No. 16-13712, 2018 WL 994318, at *3; *In re Cruz*, 441 B.R. 23 (Bankr. E.D. Pa. 2004) (citing *In re Milbourne*, 108 B.R. 522, 542 (Bankr. E.D. Pa. (1989)).

34.     Respondent's employee represented to Claimant that she had to purchase GAP insurance for her loan to be approved.

35.     As a result of Respondent's employee's representations, Claimant purchased GAP insurance that she would not have purchased but for Respondent's employee's representations.

36.     Because Respondent made purchase of GAP insurance a condition of financing the transaction, the TILA required the cost of the GAP coverage to be included as a finance charge in calculating the "amount financed," the "annual percentage rate," and the "finance charge" on the Contract.

37.     Because Respondent did not include the cost of the GAP coverage in the "finance charge" in the Contract, Respondent therefore did not disclose the actual

"finance charge" associated with the transaction in the Truth in Lending disclosures provided to Claimant.

38.     Because Respondent did not include the amount paid for the GAP coverage in the "finance charge," Respondent therefore did not disclose the actual "finance charge expressed" as an "annual percentage rate" in the Truth in Lending disclosures provided to Claimant.

39.     Because Respondent included the amount paid for the GAP coverage in the "amount financed," Respondent therefore did not disclose the actual "amount financed" in the Truth in Lending disclosures provided to Claimant.

40.     Respondent violated 15 U.S.C. § 1638(a)(2) when it failed to accurately disclose the "amount financed" to Claimant.

41.     Respondent violated 15 U.S.C. § 1638(a)(3) when it failed to accurately disclose the "finance charge" to Claimant.

42.     Respondent violated 15 U.S.C. § 1638(a)(4) when it failed to accurately disclose the finance charge expressed as an "annual percentage rate" to Claimant.

WHEREFORE, Claimant prays for relief and judgment, as follows:

a) Adjudging that Respondent violated 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. § 226.18(b);

b) Adjudging that Respondent violated 15 U.S.C. § 1638(a)(3) and Regulation Z, 12 C.F.R. § 226.18(d);

c) Adjudging that Respondent violated 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. § 226.18(e);

d) Awarding Claimant statutory damages, pursuant to 15 U.S.C. § 1640(a)(2), in the amount of twice the finance charge;

e) Awarding Claimant actual damages, pursuant to 15 U.S.C. § 1640(a)(1);

f) Awarding Claimant reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1640(a)(3);

g) Awarding Claimant any pre-judgment and post-judgment interest as may be allowed under the law;

h) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

43.     Claimant is entitled to and hereby demands a trial by jury. Claimant requests that trial be held in Kansas City, Kansas.


Dated: August 29, 2018

Respectfully submitted,

/s/ Anthony LaCroix
Anthony LaCroix
KS Bar No. 24279
406 W. 34th Street, Suite 810
Kansas City, MO 64111
Telephone: (816) 399-4380
Fax: (816) 399-4380
Email: tony@lacroixlawkc.com
*Lead Counsel for Claimant*

11

*Co-counsel with Thompson Consumer Law Group, PLLC*

**Correspondence Address:**

Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206



AMERICAN
ARBITRATION
ASSOCIATION®   INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
Telephone: (856)435-6401

September 11, 2018

Anthony LaCroix, Esq.
LaCroix Law Firm, LLC
406 West 34th Street
Suite 810
Kansas City, MO 64111
Via Email to: tony@lacroixlawkc.com

Todd E. Shadid, Esq.
Klenda Austerman, LLC
1600 Epic Center
301 North Main Street
Wichita, KS 67202
Via Email to: tshadid@klendalaw.com

**Case Number: 01-18-0003-3105**

Miracle Thompson
-vs-
Ford of Augusta, Inc. dba Eddy's Ford of Augusta

Dear Parties:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

Under R-12 of the Consumer Rules, businesses that provide for AAA arbitration in a consumer contract are obligated to submit their current or proposed consumer agreements to the AAA for review and inclusion on the Consumer Clause Registry ("Registry"). The AAA reviews the agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

This business has not previously submitted its consumer arbitration clause for review. As such, the AAA will review the clause for this matter on an expedited basis. The additional fee for this expedited review is $250, payable by the business.

**The business is also directed to submit its current consumer arbitration clause for inclusion on the Registry at** https://www.adr.org/Consumer **at which time the business will also incur a $500 Registry fee. Once the business' clause is registered, it will no longer be assessed the $250 additional expedited review fee on each consumer case filed.**

In light of the claim amount under $3,000, the parties may wish to exercise the small claims option for the parties. R-9 of the Consumer Rules states the AAA will administratively close the case upon receipt of written notice that



EXHIBIT

F

a party wants the case decided by a small claims court. If either party would like this matter decided by a small claims court, please send your written request to the Consumer Filing Team and copy the opposing party.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $1,700. We have received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, **the business is requested to submit filing fees of $1,700, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $2,500.00, totaling $4,450**.

**Please make the check payable to the American Arbitration Association and include a reference to the case number. Checks should be mailed to 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.**

**The requested payment should be received no later than September 25, 2018** and the AAA may decline to administer this dispute if the business does not timely respond. It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Thank you for your attention to this matter. If you have any questions please feel free to contact us.

Sincerely,
Consumer Filing
Administrative Assistant
Direct Dial: (877)495-4185
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

**(a)** The parties may take their claims to small claims court without first filing with the AAA.

**(b)** After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

**(c)** After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

R-11. Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol*.



# KLENDA AUSTERMAN LLC

### Attorneys at Law

Gary M. Austerman
John V. Wachtel, IV
J. Michael Morris
Jeffrey D. Peier
Scott A. Eads
John B. Gilliam
Gregory B. Klenda
Christopher A. McElgunn
Todd E. Shadid
Chad S. Nelson
❖ Christopher J. Vinduska
David W. Steed
Michelle L. Brenwald
Chasity M. Helm
❖ Michael L. Baumberger
Eric W. Lomas
Aaron J. Good

1600 Epic Center, 301 N. Main
Wichita, Kansas 67202-4816

Telephone:  (316) 267-0331
Telefacsimile:  (316) 267-0333

www.KlendaLaw.com

Aaron C. Boswell
Alex P. Flores
Samuel W. Jones

Of Counsel
Robert W. Kaplan
Carlos J. Nolla-Cornetjer
❖ Bryant E. Parker

❖ Licensed also in Missouri

L.D. Klenda (1937-1996)
Bruce W. Zuercher (1931-2008)

September 24, 2018

VIA EMAIL: ConsumerFiling@adr.org
Consumer Filing Team
American Arbitration Association

RE:   Case No. 01-18-0003-3105
      Thompson v. Ford of Augusta, Inc.

Dear Consumer Filing Team,

This law firm represents Ford of Augusta, Inc. in the above matter.  Thompson's claim is within the jurisdiction of Kansas Small Claims Procedure Act.  As a result, Ford of Augusta, Inc. gives notice that it would like this matter decided in small claims court.

Very truly yours,

Todd E. Shadid

C: Anthony LaCroix (via email: tony@lacroixlawkc.com)

EXHIBIT
71



**AMERICAN ARBITRATION ASSOCIATION**° | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION°

1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043
Telephone: (856)435-6401

September 24, 2018

Anthony LaCroix, Esq.
LaCroix Law Firm, LLC
406 West 34th Street
Suite 810
Kansas City, MO 64111
Via Email to: tony@lacroixlawkc.com

Todd E. Shadid, Esq.
Klenda Austerman, LLC
1600 Epic Center
301 North Main Street
Wichita, KS 67202
Via Email to: tshadid@klendalaw.com

Case Number: 01-18-0003-3105

Miracle Thompson
-vs-
Ford of Augusta, Inc. dba Eddy's Ford of Augusta

Dear Parties:

We are in receipt of a request from respondent to exercise the small claims option according to R-9 of the Consumer Arbitration Rules ("Rules").   R-9 states that the AAA will administratively close the case upon receipt of written notice that a party wants the case decided by a small claims court. Accordingly, the AAA has administratively closed our file.

Under the Rules, the business' obligation to remit its $1,700 share of the filing fees arises upon the satisfaction of the consumer's filing requirements.  If a matter is withdrawn prior to receipt of the filing fees, the AAA bills the business the filing fee in accordance with the Costs of Arbitration Section of the Rules.  The Consumer Arbitration Rules, including the Costs of Arbitration section, can be found on our website, www.adr.org.

The consumer satisfied the filing requirements prior to respondent's request to withdraw to small claims court.  In light of the small claim amount and prompt withdrawal notification, **the AAA will not charge the full filing fee**; we will bill the business **$200** to cover the consumer's non-refundable filing fee.  The AAA will refund any fees received from the consumer.  Please remit payment by **October 8, 2018** and make the check payable to the American Arbitration Association. **Checks should include a reference to the case number and be mailed to 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.**



**EXHIBIT**

I

We hope it does not come to this, but if the business does not timely remit the requested fee, the AAA may decline to administer future consumer arbitrations involving this business.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system.  Such electronic documents may not constitute a complete case file.  Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the date of this letter.

Please email ConsumerFiling@adr.org with any questions and we will be happy to assist you.

Sincerely,

Consumer Case Filing Team
Email: consumerfiling@adr.org
Fax: (877) 304-8457

cc: