# EXHIBIT "A"

EXHIBIT "A"

# Thompson Consumer Law Group, PLLC

| | |
|---|---|
| 5235 E. Southern Ave. D106-618 | Toll Free: 888-332-7252 |
| Mesa, AZ 85206 | Facsimile: 866-317-2674 |
| ConsumerLawInfo.com | |
| LaCroix Law Firm, LLC* | 406 W. 34th Street, Suite 810 |
| TLaCroix@ConsumerLawInfo.com | Kansas City, Missouri 64111 |

June 4, 2018

Don Hattan Ford, Inc.
10004 SW Highway 54
Augusta, KS 67010

**RE:    Miracle Thompson**
**311 Oak St. Apt. 2**
**Newton, KS 67114**
**2009 Dodge Journey, VIN 3D4GG67V09T150353**

To Whom It May Concern:

    Please be advised that this office represents the above-named individual regarding claims against your company. The purpose of this letter is to advise your company of its violations and to quickly resolve the matter without resorting to expensive and unnecessary litigation. Our client's claims are set forth in the enclosed draft complaint. We are sure your company can appreciate the need to address this issue promptly.  To that end, we request your response to each allegation and hope you will be amenable to discussing an amicable resolution to this matter.

    Further, having been formally notified of our representation, we demand you not contact our client for any reason. Instead, please direct all future contact and correspondence to this office. We look forward to hearing from you.

Best regards,

Tony LaCroix**
Attorney at Law

TL/zl
//enclosures
CC: Miracle Thompson

*Co-Counsel with Thompson Consumer Law Group, PLLC
**Licensed in Kansas and Missouri

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MIRACLE THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| vs. | ) |
| | ) **COMPLAINT AND JURY** |
| DON HATTAN FORD, INC. dba | ) **DEMAND** |
| EDDY'S FORD OF AUGUSTA, | ) |
| | ) |
| Defendant. | ) |

## NATURE OF ACTION

1. Plaintiff Miracle Thompson ("Plaintiff") brings this action against Defendant Don Hattan Ford, Inc. dba Eddy's Ford of Augusta ("Defendant") pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and its implementing Regulation Z, 12 C.F.R. Part 226 (collectively "TILA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district.

## THE TRUTH IN LENDING ACT

4. The TILA "has been found uniformly to be remedial in nature and thereby liberally and broadly construed in favor of the consumer." *Travis v. Trust Co.*

1

*Bank*, 621 F.2d 148, 151 (5th Cir. 1980); *Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir. 1979); *Gardner & N. Roofing & Siding Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 464 F.2d 838, 841 (D.C. Cir. 1972); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009).

5. The TILA is strictly enforced, and absolute compliance is necessary. *In re Porter*, 961 F.2d 1066, 1078 (3d Cir. 1992) ("A creditor who fails to comply with TILA in any respect is liable to the consumer under the statute regardless of the nature of the violation or the creditor's intent."); *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced."); *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976) ("[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability."); *see also Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007); *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 801 (6th Cir. 1996); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986); *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982).

6. "[S]trict interpretation of the TILA has largely been responsible for the TILA's success in achieving widespread compliance with its requirements." *In re Brown*, 106 B.R. 852, 857 (Bankr. E.D. Pa. 1989). Indeed, without strict compliance, the TILA's goals of standardized uniform disclosures would quickly be eroded. *See*

*Reneau v. Mossy Motors*, 622 F.2d 192, 195 (5th Cir. 1980) ("The technical requirements of the TILA and Regulation Z must be strictly enforced if standardization of terms, permitting meaningful comparisons of available credit by consumers, is to be achieved.").

7. Creditors must make TILA disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17. If a creditor's disclosure is susceptible to more than one "plausible" interpretation, the creditor has not complied with the TILA. *See Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006); *In re Porter*, 961 F.2d 1066, 1077 (3d Cir. 1992).

8. This is because the "TILA neither requires nor encourages borrowers to guess or to assume that a disclosure has a particular meaning." *Wright v. Tower Loan of Mississippi, Inc.*, 679 F.2d 436, 445 (5th Cir. 1982); *see also Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 372 (5th Cir. 1976) ("This court . . . is bound by the intent of Congress to eliminate the necessity of assumptions on the part of the consumer.").

9. The clarity of a creditor's disclosure is question of law, determined on an "ordinary consumer" standard. *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006); *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327–28 (7th Cir. 1999); *Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291, 296 (5th Cir. 1978). Because this standard is objective, what a given consumer knows or does not know is immaterial when evaluating a creditor's TILA disclosures. *See Purtle*, 91 F.3d at 800;

*Semar*, 791 F.2d 699, 704 (citing *Huff v. Stewart-Gwinn Furniture Co.*, 713 F.2d 67, 69 (4th Cir.1983)).

## PARTIES

10. Plaintiff, is a natural person who at all relevant times resided in the State of Kansas, County of Harvey, and City of Newton.

11. Defendant is a Kansas corporation that at all relevant times was engaged in the business of selling and financing motor vehicles.

12. At all relevant times, Defendant, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable.

13. Defendant is a "creditor" within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. § 226.2(17).

## FACTUAL ALLEGATIONS

14. On or about September 23, 2017, Plaintiff visited Defendant's dealership to shop for an automobile to be used for personal, family or household purposes.

15. Plaintiff selected a 2009 Dodge Journey (the "Vehicle") and agreed to purchase the Vehicle from Defendant.

16. To finance the purchase of the Vehicle, Plaintiff executed a separate retail installment contract (the "Contract") with Defendant, dated September 23, 2017.

17. During the discussions regarding the transaction, Defendant's employee stated to Plaintiff that she was required to purchase GAP coverage in order for the financing for the Vehicle to be approved.

18. Plaintiff purchased GAP coverage for the Vehicle based upon Defendant's representations that it was required in order to obtain financing.

19. Plaintiff would not have purchased GAP coverage but for Defendant's representation that it was required to obtain financing.

20. The Truth in Lending Disclosure statement provided to Plaintiff in connection with her purchase disclosed an "annual percentage rate" of 19.950%, a "finance charge" of $4,366.71, and an "amount financed" of $11,976.05.

21. The "itemization of amount financed" disclosure reflects that Plaintiff purchased GAP coverage at a price of $699.00 and that this amount was included in the "amount financed."

22. Upon information and belief, Defendant's employee earned a commission the GAP coverage that Plaintiff purchased.

23. Upon information and belief, Defendant itself earned a profit in excess of $200.00 on the GAP coverage that Plaintiff purchased.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1638(a)(2)

24. Plaintiff repeats and re-alleges each and every factual allegation above.

25. The Truth in Lending Act instructs that the Finance Charge "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 15 U.S.C. § 1605(a), 12 C.F.R. § 226.4(a).

26. Under the TILA, add-on products like GAP insurance are finance charges, and must be disclosed as such, unless the product is voluntary, and the Creditor makes additional disclosures not at issue here. 12 C.F.R. § 226.4(d).

27. In interpreting the TILA, special deference must be paid to the Federal Reserve Board's ("FRB") interpretation, because "Congress has specifically designated the [Federal Reserve] Board as the primary source for interpretation and application of the TILA . . . ." *Hess v. Citibank, (S. Dakota), N.A.*, 459 F.3d 837, 842 (8th Cir. 2006)).

28. Thus, "[u]nless demonstrably irrational, the Federal Reserve Board's interpretations are dispositive of TILA disputes." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790, 797, 63 L. Ed. 2d 22 (1980).

29. Moreover, if courts deviate from the strict interpretation of the TILA in search of a more "functional approach," the FRB takes action to overturn the court's decision. *See Hamm v. Ameriquest Mortgage Co.*, 506 F.3d 525, 529 (7th Cir. 2007)

6

(explaining how the Seventh Circuit adopted a hyper technical approach to TILA in response to the FRB's efforts to upend its decision in *Carmichael v. Payment Ctr., Inc.*, 336 F.3d 636, 641 (7th Cir. 2003), and the FRB specifically identifying the court's decision as the impetus for its action).

30. The FRB, has declared the voluntariness of add-on products, like GAP insurance and extended warranties to be a factual issue ascertainable only "by reference to all of the circumstances of a particular transaction. Inquiry into these circumstances, of course, is not foreclosed by the presence of a customer's signature on an insurance authorization." Federal Reserve Board Staff Letter of December 20, 1977, No. 1270, Consumer Credit Guide (CCH) ¶ 31,756.

31. The FRB, in March 1978, elaborated on its guidance as follows:

> While the customer's signature on a document would be some evidence of voluntariness, of course, **it would not conclusively establish that the insurance was not required**. Any number of collateral acts or practices by a creditor could negate the apparently affirmative nature of the customer's election to purchase insurance.

Federal Reserve Board Staff Letter of March 21, 1978, 5 Cons. Cred. Guide (CCH) ¶31,777 (emphasis added).

32. In light of the FRB's guidance, recitals regarding voluntariness do not establish that a given product was voluntary. *See Garl v. Genesee Valley Auto Mall*, No. 16-13712, 2018 WL 994318, at *3 (E.D. Mich. Feb. 21, 2018); *Beltran v. USA Auto Inc.*, No. CV-14-02247-PHX-GMS, 2015 WL 12672084, at *2 (D. Ariz. Feb. 23, 2015) (citing cases); *Robinson v. Carport Sales & Leasing, Inc.*, No. 6:14-CV-

7

1358-ORL-TBS, 2015 WL 224655, at *3 (M.D. Fla. Jan. 15, 2015) (GAP insurance could be compulsory despite contract stating GAP was voluntary); *Hager v. Am. Gen. Fin., Inc.*, 37 F. Supp. 2d 778, 784 (S.D.W. Va. 1999) (credit life insurance could be required despite language to the contrary in contract); *In re Milbourne*, 108 B.R. 522, 541 (Bankr. E.D. Pa. 1989) ("if a lender does in fact misrepresent to customers that insurance is required, even though the loan contracts unequivocally state that the purchase of insurance is optional, a violation of UDAP and TILA could be established"); *Kaminski v. Shawmut Credit Union*, 494 F. Supp. 723, 729 (D. Mass. 1980) (credit life was not voluntary despite declaration to the contrary); *In re Cruz*, 441 B.R. 23, 33 (Bankr. E.D. Pa. 2004) (credit insurance was mandatory despite notation that it was optional); *Marine Midland Bank v. Burley*, 73 A.D.2d 1041, 1042, 425 N.Y.S.2d 429, 431 (1980); *Matter of Dickson*, 432 F. Supp. 752, 759 (W.D.N.C. 1977) ("whether the insurance was not required . . . of course, is not conclusively established by the statement on the disclosure that it was not required").

33.   To prove that a product is actually compulsory despite contract language to the contrary, a "borrower is obliged to prove that (1) the lender affirmatively represented, by words or by conduct, that [the product] was in fact required; and (2) as a result of the lender's actions, the borrower purchased [a product] that it is likely that (s)he would not have otherwise purchased. *Garl*, No. 16-13712, 2018 WL 994318, at *3; *In re Cruz*, 441 B.R. 23 (Bankr. E.D. Pa. 2004) (citing *In re Milbourne*, 108 B.R. 522, 542 (Bankr. E.D. Pa. (1989)).

34. Defendant's employee represented to Plaintiff that she had to purchase GAP insurance for her loan to be approved.

35. As a result of Defendant's employee's representations, Plaintiff purchased GAP insurance that she would not have purchased but for Defendant's employee's representations.

36. Because Defendant made purchase of GAP insurance a condition of financing the transaction, the TILA required the cost of the GAP coverage to be included as a finance charge in calculating the "amount financed," the "annual percentage rate," and the "finance charge" on the Contract.

37. Because Defendant did not include the cost of the GAP coverage in the "finance charge" in the Contract, Defendant therefore did not disclose the actual "finance charge" associated with the transaction in the Truth in Lending disclosures provided to Plaintiff.

38. Because Defendant did not include the amount paid for the GAP coverage in the "finance charge," Defendant therefore did not disclose the actual "finance charge expressed" as an "annual percentage rate" in the Truth in Lending disclosures provided to Plaintiff.

39. Because Defendant included the amount paid for the GAP coverage in the "amount financed," Defendant therefore did not disclose the actual "amount financed" in the Truth in Lending disclosures provided to Plaintiff.

40. Defendant violated 15 U.S.C. § 1638(a)(2) when it failed to accurately disclose the "amount financed" to Plaintiff.

41. Defendant violated 15 U.S.C. § 1638(a)(3) when it failed to accurately disclose the "finance charge" to Plaintiff.

42. Defendant violated 15 U.S.C. § 1638(a)(4) when it failed to accurately disclose the finance charge expressed as an "annual percentage rate" to Plaintiff.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that Defendant violated 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. § 226.18(b);

b) Adjudging that Defendant violated 15 U.S.C. § 1638(a)(3) and Regulation Z, 12 C.F.R. § 226.18(d);

c) Adjudging that Defendant violated 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. § 226.18(e);

d) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1640(a)(2), in the amount of twice the finance charge;

e) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1640(a)(1);

f) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1640(a)(3);

g) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

h) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

43. Plaintiff is entitled to and hereby demands a trial by jury. Plaintiff requests that trial be held in Kansas City, Kansas.

Dated: June 4, 2018

Respectfully submitted,

/s/ Anthony LaCroix
Anthony LaCroix
KS Bar No. 24279
406 W. 34th Street, Suite 810
Kansas City, MO 64111
Telephone: (816) 399-4380
Fax: (816) 399-4380
Email: tony@lacroixlawkc.com
*Lead Counsel for Plaintiff*

*Co-counsel with Thompson Consumer Law Group, PLLC*

**Correspondence Address:**

Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206