## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MIRACLE THOMPSON ,

      Plaintiff,

      v.

FORD OF AUGUSTA, INC. D/B/A EDDY'S
FORD OF AUGUSTA,

      Defendant.

Case No. 18-2512-JAR-KGG

## MEMORANDUM AND ORDER

Plaintiff Miracle Thompson brings this action asserting claims under the Truth in

Lending Act ("TILA")[1] arising out of her purchase of a 2009 Dodge Journey from Defendant

Ford of Augusta, a car dealer that extends consumer credit for the purchase of its vehicles.

Before the Court is Defendant Ford of Augusta's Motion to Dismiss (Doc. 3) under Fed. R. Civ.

P. 12(b)(1) for lack of subject matter jurisdiction.  The motion is fully briefed and the Court is

prepared to rule.  As described more fully below, the Court grants in part and denies in part

Defendant's motion.  The Court denies Defendant's motion to dismiss for lack of subject matter

jurisdiction, but when construed as a motion to compel arbitration, grants the motion.

## I.     Background

According to Plaintiff's Complaint, on September 23, 2017, Plaintiff visited Defendant's

dealership to shop for an automobile to be used for personal, family or household purposes.

Plaintiff selected a 2009 Dodge Journey (the "Vehicle") and agreed to purchase the Vehicle from

Defendant.  During the discussions regarding the transaction, Defendant's employee stated to

---

[1] 15 U.S.C. § 1638(a)(2).

Plaintiff that she was required to purchase GAP coverage for the Vehicle's financing to be

approved. Plaintiff purchased GAP coverage for the Vehicle based upon these representations.

Plaintiff would not have purchased GAP coverage but for Defendant's representation that it was

required to obtain financing.

To finance the purchase of the Vehicle, Plaintiff executed a separate retail installment

contract (the "Contract") with Defendant, dated October 24, 2017. The Contract included a GAP

insurance addendum, and an Arbitration Agreement.

The Arbitration Agreement contains the following key provisions:

> Any Claim, shall be resolved, upon election of you or Dealer, by binding arbitration pursuant to this Agreement and the applicable rules or procedures of the American Arbitration Association ("AAA"). . . . The election to arbitrate may be made even if an action has been filed in court, so long as judgment has not been entered. We agree not to invoke our right to arbitrate an individual Claim you may bring in small claims court or an equivalent court, if any, so long as the Claim is pending only in that court. You can obtain rules and forms from the AAA, (800)778-7879; www.adr.org.
>
> . . . .
>
> . . . In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this Agreement, this Agreement shall govern.
>
> **THE PARITES [sic] ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS ARBITRATION. THE PARTIES FURTHER ACKNOWLEDGE THAT DISCOVERY IS MORE LIMITED IN ARBITRATION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY EITHER PARTY.**[2]

---

[2]*Id.* (emphasis in original). There is a separate arbitration clause in the GAP addendum to the Contract, Doc. 4-1 at 14, however, the parties appear to agree that the separate Arbitration Agreement attached to the Contract

On June 4, 2018, Plaintiff's counsel sent defense counsel a demand letter and a draft complaint alleging TILA violations arising out of her purchase of GAP insurance when financing the Vehicle.[3] Defendant responded by denying the claims and providing Plaintiff a copy of the Contract, GAP Addendum, and Arbitration Agreement.[4]

Plaintiff subsequently submitted a demand for arbitration to the AAA, indicating the amount in dispute as $2,000 plus attorney's fees and costs. In a letter dated September 11, 2018, the AAA notified Defendant of Plaintiff's demand for arbitration. The AAA also informed the parties that Defendant failed to previously submit the Arbitration Agreement to it for review, and that the AAA therefore would need to review it on an expedited basis. Per AAA Consumer Arbitration Rule R-12, Defendant was obliged to pay a $250 expedited review fee, as well as a $500 fee to include the Agreement on the AAA Registry.[5] These fees would be in addition to the requisite filing fees.

Rule R-12 required Defendant to pay the requisite fees, or the AAA would decline to arbitrate:

> If a business does not submit its arbitration agreement for review
> and a consumer arbitration then is filed with the AAA, the AAA
> will conduct an expedited review at that time. Along with any
> other filing fees that are owed for that case, the business also will
> be responsible for paying the nonrefundable review and Registry
> fee (including any fee for expedited review at the time of filing) for
> this initial review . . . The AAA will decline to administer

---

controls. Indeed, that separate Arbitration Agreement provides that it "modifies and is part of that certain Retail Installment Agreement/Sales contract and other agreements (hereinafter collectively referred to as 'Contract') entered into on 10/24/17." *Id.* at 16.

[3]Doc. 6-1 at 2.

[4]Doc. 4-1 at 4.

[5]*Id.*

consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.[6]

Also in its September 11, 2018 letter, the AAA informed Defendant that

> [i]n light of the claim amount under $3,000, the parties may wish to exercise the small claims option for the parties. R-9 of the Consumer Rules states the AAA will administratively close the case upon receipt of written notice that a party wants the case decided by a small claims court. If either party would like this matter decided by a small claims court, please send your written request to the Consumer Filing Team and copy the opposing party.[7]

Rule R-9 states in part:

> If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:
> . . . .
>
> (b) After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.[8]

The AAA set a deadline of September 25, 2018, for Defendant to make the necessary payments to proceed with arbitration.

On September 24, 2018, Defendant notified the AAA and Plaintiff that it "would like this matter decided in small claims court."[9] Also on September 24, the AAA administratively closed

---

[6] AMERICAN ARBITRATION ASSOCIATION CONSUMER ARBITRATION RULES, Rule R-12 (2014) https://www.adr.org/sites/default/files/Consumer_Rules_Web_0.pdf.

[7] Doc. 4-1 at 32–33.

[8] AMERICAN ARBITRATION ASSOCIATION CONSUMER ARBITRATION RULES, Rule R-9 (2014) https://www.adr.org/sites/default/files/Consumer_Rules_Web_0.pdf.

[9] Doc. 4-1 at 35.

the file under Rule R-9.[10]  In its September 24 letter informing the parties that it was

administratively terminating the case, it advised:

> In light of the small claim amount and prompt withdrawal
> notification, the AAA will not charge the full filing fee; we will
> bill the business $200 to cover the consumer's non-refundable
> filing fee.  The AAA will refund any fees received from the
> consumer.  Please remit payment by October 8, 2018 . . . .[11]

Plaintiff initiated this action later in the day on September 24, 2018, alleging TILA

violations arising out of Defendant's sale of GAP insurance.  Plaintiff asserts jurisdiction under

15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

## II.     Subject Matter Jurisdiction

Defendant moves to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1).  District courts have "original jurisdiction of all civil actions arising under the

Constitution, laws or treaties of the United States."[12]  "A case arises under federal law if its 'well

pleaded complaint establishes either that federal law creates the cause of action or that the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

law.'"[13]  Plaintiff is responsible for showing the court by a preponderance of the evidence that

jurisdiction is proper.[14]  Mere allegations of jurisdiction are not enough.[15]

Here, Plaintiff pleads a cause of action under TILA, a federal statute.  Therefore, the

Court plainly has federal question jurisdiction over her case.  There is no indication that a case

---

[10]*Id.* at 36.

[11]*Id.*

[12]28 U.S.C. § 1331.

[13]*Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983)).

[14]*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[15]*Id.* at 798.

has been filed in small claims court that could be deemed the "first-filed" case, nor does

Defendant advance that argument. The Court is not deprived of subject matter jurisdiction

merely because the claims are subject to an agreement to arbitrate.[16] And Defendant fails to

identify any authority that the AAA internal rules of procedure dictate this Court's subject matter

jurisdiction.

The gravamen of Defendant's motion is that the Arbitration Agreement controls the

forum for Plaintiff's claims in this matter. The Federal Arbitration Act ("FAA") applies to

written arbitration agreements in any contract "evidencing a transaction involving commerce."[17]

Although the FAA "directs that a court 'stay the trial of the action until such arbitration has been

had in accordance with the terms of the agreement,'"[18] some courts have considered motions to

dismiss under Rule 12(b)(1) on the basis of arbitration clauses.[19]

Defendant does not technically seek to compel arbitration in this motion to dismiss, but

does ask this Court to declare that small claims court is the appropriate forum for this dispute

under the terms of the Arbitration Agreement. The Fourth Circuit court has determined that so

long as the party makes clear that it is seeking enforcement of an arbitration agreement, the

"motion is sufficient to invoke the full spectrum of remedies under the FAA, including a stay

under § 3."[20] To require Defendant to file either a motion to compel arbitration under § 3 of the

---

[16]*See The Anaconda v. Am. Sugar Refining Co.*, 322 U.S. 42, 44 (1944) ("[section 3] obviously envisages action in a court on a cause of action and does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate.").

[17]9 U.S.C. § 2.

[18]*Figuerola Peruvians, L.L.C. v. N. Am. Peruvian Horse Ass'n*, No. 09-04511 MMM, 2009 WL 10673941, at *4 & n. 26 (C.D. Cal. Dec. 18, 2009) (quoting 9 U.S.C. § 3).

[19]*See, e.g., id.* (collecting cases); *Thompson v. Nienaber*, 239 F. Supp. 2d 478, 482–84 (D.N.J. 2002) (construing motion to dismiss under Rule 12(b)(1) as a motion to compel arbitration where all parties were aware that the motion dealt with arbitrability of dispute, seeking to avoid "hypertechnical ruling.").

[20]*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001).

FAA, or a petition to direct that arbitration proceed in the manner provided by the agreement

under § 4, would require a "hypertechnical reading of [Defendant's] pleadings [that] would be

inconsistent with the 'liberal federal policy favoring arbitration agreements.'"[21]  Where, as here,

all parties are aware that the motion deals with arbitrability of the dispute and has an opportunity

to respond, it is appropriate for the Court to consider arbitrability.[22]  Both parties address the

enforceability and construction of the Arbitration Agreement in their briefs.  The Court finds that

"[i]t is inconceivable that the parties did not submit everything relevant to the subject, and

accordingly there is no reason to delay issuing a decision on the arbitration question to afford the

parties further opportunity to supplement the record."[23]  Therefore, the Court proceeds to

consider Defendant's request to enforce the Arbitration Agreement by contending that AAA

Rule R-9 applied, allowing it to submit the dispute to small claims court.

### III.     Motion to Enforce Arbitration Agreement

While the interpretation of contracts—including arbitration agreements—is generally a

matter of state law, the FAA imposes rules beyond those found in state contract law.[24]  Under the

FAA, a court should compel arbitration if it finds that (1) a valid arbitration agreement exists

between the parties, and (2) the dispute before it falls within the scope of the agreement.[25]  When

---

[21]*Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

[22]*See id.*; *Thompson*, 239 F. Supp. 2d at 484.

[23]*Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67–68 (D.D.C. 2003). Both parties submitted exhibits on the arbitrability questions with their briefs, including the Arbitration Agreement.  *See* Docs. 4-1, 6-1.

[24]*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009); *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[25]9 U.S.C. §§ 2–3.

determining the scope of an arbitration agreement, "[d]oubts should be resolved in favor of coverage."[26]

"If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains . . . broad and sweeping language."[27]  However, the presumption of arbitrability disappears when the parties dispute the validity and enforceability of an arbitration agreement.[28]  "[W]hether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate."[29]  "No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit."[30] "A court may compel arbitration of a particular dispute . . . only when satisfied that the 'making' of the agreement to arbitrate is not at issue."[31]

There is no dispute that Plaintiff's TILA claims are within the scope of the Arbitration Agreement.  Indeed, Plaintiff submitted the claim to arbitration in the first instance.  Instead, the parties dispute the impact of Defendant availing itself of, at AAA's urging, Rule R-9 in this case. In her response to Defendant's motion, Plaintiff argues: (1) Defendant defaulted on the Arbitration Agreement by not paying the AAA all requisite arbitration fees; and (2) applying Rule R-9 renders the Arbitration Agreement unenforceable because it is inconsistent with other

---

[26]*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

[27]*ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995); *see also Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014).

[28]*Bellman*, 563 F. App'x at 613 (quoting *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998)).

[29]*Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (citing *United Steelworkers*, 363 U.S. at 582).

[30]*Id.* (citation omitted).

[31]*Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010) (quoting *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)).

terms in the agreement, and operates to deprive Plaintiff of her right to vindicate her rights under

TILA.  The Court discusses each argument in turn.

### A.    Failure to Pay Fees

Plaintiff first argues that by failing to pay the AAA arbitration fees and forcing Plaintiff

into small claims court, Defendant defaulted on the Arbitration Agreement and lost the right to

compel this matter to arbitration.  In support of this argument, Plaintiff relies on the Tenth

Circuit Court of Appeals' decision in *Pre-Paid Legal Services, Inc. v. Cahill*,[32] and similar cases

holding that a party to an arbitration agreement defaults when the AAA terminates an arbitration

proceeding based on the party's failure to pay the requisite fees.[33]

Under § 3 of the FAA, the Court should not compel arbitration if the applicant for the

stay is "in default in proceeding with such arbitration."  In *Cahill*, the Tenth Circuit held that the

failure to pay arbitration fees constitutes default under § 3.[34]  In a footnote, the Tenth Circuit

explained:

> [S]ome courts have viewed a party's failure to pay its share of the
> arbitration fees as a breach of the arbitration agreement, which
> precludes any subsequent attempt by that party to enforce that
> agreement. Other courts have treated the failure to pay arbitration
> fees as a waiver of the right to arbitrate. Under either approach, the
> result is the same: Mr. Cahill's failure to pay his share of costs
> precludes him from seeking arbitration.[35]

In *Cahill*, the court considered repeated requests by the AAA for Mr. Cahill to pay his

share of arbitration fees.  Only after these repeated requests went unanswered did the AAA

---

[32]786 F.3d 1287 (10th Cir. 2015).

[33]*Id.* at 1294.

[34]*Id.*

[35]*Id.* n.3 (citing *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1011 (9th Cir. 2005)).

terminate the arbitration proceeding.[36]  Having found him in default, the court ruled that the

district court was not obligated under § 3 to maintain the previously-issued stay pending

arbitration.[37]  Cases following *Cahill* likewise deal with a party's complete failure to pay

arbitration fees, leading the AAA to terminate the arbitration due to that party's failure to pay.[38]

For example, in *Bruzda v. Sonic Automotive*, the District Court of Colorado found that the

defendant's failure to pay its arbitration fees after repeated warnings by the AAA precluded it

from seeking arbitration under 9 U.S.C. §§ 3 and 4.[39]

Here, the AAA did not terminate the arbitration proceeding based on Defendant's failure

to pay filing fees.  Instead, in the same September 11 letter setting forth Defendant's arbitration

fees, the AAA informed the parties of their option under R-9 to file a notice of intent to file the

case in small claims court given the amount in controversy.  Upon submitting notice of its intent

to file the claim in small claims court, the AAA informed Defendant that its filing fee would be

reduced.  Unlike in *Cahill* and *Bruzda*, Defendant did not ignore repeated warnings from the

AAA that it owed arbitration fees, and the failure to pay such fees was not the basis for the AAA

closing the arbitration file.  The AAA closed the arbitration file because Defendant notified it

and Plaintiff of its intent to submit to small claims court, a procedure the AAA invited Defendant

to follow based on an internal AAA rule.  Under these circumstances, the Court does not find

waiver or default.

      **B.**        **Inconsistency Between AAA Rule R-9 and the Arbitration Agreement**

---

[36]*Id.*

[37]*Id.* at 1295.

[38]*See, e.g.*, *Bruzda v. Sonic Auto.*, No. 16-2413, 2017 WL 5178967, at *2–3 (D. Colo. Jan. 23, 2017);
*Norgren, Inc. v. Ningbo Prance Long, Inc.*, No. 14-3070-CBS, 2015 WL 5562183, at *2 (D. Colo. Sept. 22, 2015).

[39]*Bruzda*, 2017 WL 5178967, at *2–3.

Plaintiff argues that AAA Rule R-9 is inconsistent with the terms of the Arbitration

Agreement by allowing the Dealer to "force" plaintiffs into small claims court without an

attorney, effectively denying her a means to vindicate her rights under TILA.  First, the Court

considers whether Rule R-9 and the Arbitration Agreement are inconsistent.  Courts apply state-

law principles in deciding whether parties agreed to arbitrate.[40]  Under Kansas law, "[t]he

primary rule for interpreting written contracts is to ascertain the parties' intent.  If the terms of

the contract are clear, the intent of the parties is to be determined from the contract language

without applying rules of construction."[41]

The Arbitration Agreement provides that upon the election of either party, claims must be

arbitrated.  Once arbitration is invoked by either party, they waive their right to litigate the

claims.  The Agreement further states that Defendant will not invoke the right to arbitrate if

*Plaintiff* opts to file in small claims court.  The Agreement incorporates the AAA Rules, but only

to the extent they are not inconsistent with the Arbitration Agreement, in which case the

Agreement "shall govern."  The plain language of the Arbitration Agreement resolves this

dispute.  The Agreement provides for arbitration if either party elects, but only Plaintiff may

elect small claims court, and if it does, Defendant agrees not to invoke the right to arbitrate.  Yet,

under AAA Rule R-9, *either* part may submit notice of intent to file in small claims court in

order to terminate the arbitration proceeding if the claim meets the amount in controversy

requirement.  That procedure is inconsistent with the parties' Arbitration Agreement.

Defendant argues that AAA Rule R-9 is consistent with the agreement because the parties

intended that the Agreement allow for quick and inexpensive resolution of the dispute either

---

[40]*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[41]*Carrothers Const. Co. v. City of S. Hutchinson*, 207 P.3d 231, 239 (Kan. 2009).

through arbitration or small claims court.  Defendant argues that the language in the agreement

recognizes "that resolving disputes in small claims court is the *most* cost effective and expedient

forum."[42]  But Defendant ignores that the agreement only contemplates Plaintiff electing small

claims court.  Rule R-9, in contrast, effectively changes that provision to allow either party to

submit to small claims court.  These are plainly inconsistent provisions, and the Agreement

provides that where there is inconsistency the agreement controls.  Under the Agreement,

Defendant could choose not to insist on arbitration if Plaintiff opted to file in small claims court,

but Defendant could not initiate a claim in that forum.

Having found an inconsistency between the Arbitration Agreement and AAA Rule R-9,

the Court must address the appropriate remedy for the inconsistency—an issue neither party

meaningfully addresses.  Plaintiff suggests the entire Agreement is void, and therefore she

should be allowed to proceed in federal court.  But the Agreement provides that "[i]f any portion

of this Agreement is deemed invalid or unenforceable under any law or statute consistent with

the FAA, it shall not invalidate the remaining portions of this Agreement."[43]  Indeed, "the

agreement is faulty only as it has been applied by the AAA, a third party.  In light of the strong

federal policy in favor of arbitrability . . . the arbitration should proceed according to the

remaining terms of the arbitration agreement."[44]

As in *Morrison*, this is a case where the error that rendered the Agreement unenforceable

was invited by the AAA, a third party.[45]  It was the AAA that highlighted Rule R-9 and

encouraged *either* party to file the claim in small claims court in order to terminate the arbitration

---

[42]Doc. 7 at 4.

[43]Doc. 4-1 at 16.

[44]*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 680 (6th Cir. 2003).

[45]*Id.* at 679.

proceeding.  Defendant took up the AAA on its invitation to save a substantial sum of money in arbitration fees by submitting to small claims court instead.  Although the Court finds that application of Rule R-9 was inconsistent with the parties' Agreement, the plain language of the Agreement counsels against a finding that the entire agreement in unenforceable.  And § 4 of the FAA provides an adequate remedy: Plaintiff can petition the Court for an order under that provision directing that the arbitration proceed in the manner provided for in the parties' agreement.

Plaintiff urges that the inconsistency renders the entire Arbitration Agreement unenforceable because it disallows her from vindicating her rights under TILA while represented by counsel.  But Plaintiff's argument hinges on a finding that Rule R-9 may be implemented in harmony with the agreement.  As described above, the Court finds that the plain language of the agreement dictates the result in this case: R-9 and the Agreement are inconsistent on the issue of which party may initiate a small claims court action, but this inconsistency does not render the entire agreement unenforceable.  Instead, this case should be stayed pending arbitration under § 3 of the FAA because Plaintiff invoked arbitration.  Plaintiff may seek an order from this Court directing that the arbitration it initiated proceed in the manner provided for under the parties' agreement pursuant to § 4 of the FAA.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Ford of Augusta's Motion to Dismiss (Doc. 3) under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is **granted in part and denied in part**.  The motion to dismiss is denied, but when construed as a motion to compel arbitration under 9 U.S.C. § 3, the motion is granted.  Plaintiff shall have until February 27, 2019, to file any motion pursuant to 9 U.S.C. § 4.  If no such motion is filed

by that date, or upon ruling on any motion that is filed, this case will be stayed pending arbitration.

**IT IS SO ORDERED.**

Dated: February 15, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE